UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ZONEPERFECT NUTRITION COMPANY )
                               )
                Plaintiff,     )   04 10760 REK
                               )
        v.                     )   CIVIL ACTION
                               )   NO.
                               )
HERSHEY FOODS CORPORATION,     )
HERSHEY CHOCOLATE &            )
CONFECTIONERY CORPORATION, and )
BARRY D. SEARS,                )
                               )
                Defendants.    )

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED CASE MANAGEMENT ORDER AND PROMPT TRIAL DATE**

Plaintiff, ZonePerfect Nutrition Company ("ZonePerfect"), by its undersigned attorneys, submits this memorandum in support of its Motion for Expedited Case Management Order and Prompt Trial Date. As grounds for this motion, ZonePerfect states as follows:

**Background**

By its motion, ZonePerfect requests that the Court schedule expedited discovery and a trial date for this summer. Expeditious discovery and a prompt trial are sought in order that this matter can be tried before defendants' launch – possibly as early as July of this year – of a product line that clearly infringes on ZonePerfect's trademarks and is already being promoted by false statements which disparage ZonePerfect's products. As set forth more fully in the Complaint, ZonePerfect and its predecessor in interest (collectively "ZonePerfect") have been successfully marketing a line of food products and other goods and services in connection with the "ZONE™," "ZONE DIET™," "ZONE PERFECT®," the

stylized Zone logo (the "ZONE logo"), and other related registered and common law "ZONE" trademarks (collectively the "ZONE Marks"). ZonePerfect's products were developed with the approval and involvement of defendant Barry Sears ("Sears"), who was the President and principal shareholder of the plaintiff. Through its efforts, ZonePerfect has become the sole and exclusive holder of common law and statutory rights in the ZONE Marks in connection with the sale of food products, including its highly successful ZonePerfect® nutrition bars. *Complaint,* ¶ 1.

In 1996, defendant Sears co-founded ZonePerfect and became its first President. Sears is the author of several books, including 1995's <u>The Zone</u>, which described a diet balanced between carbohydrates, proteins and fats, also known as the "Zone Diet." Sears transferred to ZonePerfect all rights to take the dietary and nutritional principles of the Zone Diet, and the "Zone" name and "Zone" logo, found then only on books by Sears, and turn them into a commercially viable line of food products. In his capacity as ZonePerfect's President, Sears was personally involved in ZonePerfect's development and promotion of products sold under the ZONE Marks. Shortly after its inception, ZonePerfect began distributing its ZonePerfect® bars through retail channels. ZonePerfect succeeded in growing the ZonePerfect® line of products and in particular made the ZonePerfect® line of bars into one of the leading nutrition bars in the country. As such, ZonePerfect's key asset – the ZONE Marks as used on its products — grew in value as well. *Complaint,* ¶ 2.

By the late 1990s, Sears began to state a desire to be bought out of ZonePerfect to allow him to focus on research and writing. In light of these wishes, ZonePerfect bought out Sears' interest in the company in 2001 for millions of dollars, pursuant to an agreement that ZonePerfect would retain all rights in and continue to use the ZONE Marks for nutrition bars and other food and related products, and that ZonePerfect would allow Sears to register and use the ZONE Marks solely in connection with the publication of books. *Complaint,* ¶ 3.

Case 1:04-cv-10760-RGS   Document 6   Filed 04/15/2004   Page 3 of 9

-3-

Following Sears' buy-out, ZonePerfect's business continued its dramatic growth. By 2003, ZonePerfect had become a significant force in the nutritional foods arena, and had attracted the attention of a number of companies, including defendant Hershey, interested in acquiring the company and its principal asset – the ZONE Marks. In March 2003, Hershey offered over $125 million to buy ZonePerfect. This offer came only after teams of Hershey representatives were provided with a virtual blueprint of every aspect of ZonePerfect's business during months of intensive, comprehensive due diligence efforts under a strict confidentiality agreement. *Complaint,* ¶ 4.

After receiving this virtual "how to" operate a successful nutrition bar company, as well as a copy of ZonePerfect's 2001 Agreement with Sears granting Sears the right to use "Zone" only in connection with books, Hershey made and was granted an odd request: to conduct a meeting with Sears himself -- though by then long-since out of the company -- and to have a portion of that meeting outside the presence of any ZonePerfect representative. Following this private meeting, Hershey's interest in acquiring ZonePerfect slacked. In the face of other bidders, Hershey did not submit a higher offer. Instead, it allowed itself to be outbid by Abbott Laboratories later that year. *Complaint,* ¶ 5.

A mere six months after the Abbott deal to acquire ZonePerfect closed, Hershey and Sears announced a plan to "partner" on a new "Zone" bar that will directly undermine ZonePerfect's interest and goodwill in the ZONE Marks. Contrary to the express terms of his agreement with ZonePerfect and in contravention of ZonePerfect's well-established trademark rights, Sears has joined with Hershey to market the "SmartZone" bar -- a nutrition bar that uses ZonePerfect's ZONE Marks to compete directly with the ZonePerfect® bar. Hershey has announced that the "SmartZone" bar is slated for launch beginning third quarter, 2004, and has been touted by both Hershey and Sears as the "first" nutrition bar "approved" by Sears – a statement that is patently false and misleading, given Sears' prior ownership interest in ZonePerfect and his years of work there personally

designing and approving ZonePerfect® nutrition bars. A comparison of the ZonePerfect® logo and bar and the proposed Hershey/Sears logo and bar is attached to the Complaint as Exhibit 1. *Complaint,* ¶ 6.

Hershey and Sears' effort to market and distribute the "SmartZone" bar constitutes a bad faith effort to confuse the public and trade off of the goodwill developed and acquired by ZonePerfect, and is likely to cause significant and irreparable consumer confusion regarding ZonePerfect's ZONE Marks. *Complaint,* ¶ 7.

If Defendants launch the "SmartZone" bar in third quarter, 2004 — thus possibly as early as July — as threatened, ZonePerfect will suffer substantial and irreparable harm to its business, as Defendants will be permitted to trade off of the trademarks and goodwill owned and generated by ZonePerfect. *Complaint,* ¶¶ 83-100.

As established below, expedited discovery and the setting of a prompt trial date is justified to ensure that the rights and interests of ZonePerfect are not irreparably harmed by the launch of the "SmartZone" bar.

## Discussion

**I.     This Court Has Broad Discretion to Order the Requested Expedited Discovery.**

The Federal Rules of Civil Procedure confer upon this Court broad general powers to control the sequence and timing of discovery and the schedule of trial. *See, e.g.,* Fed. R. Civ. P. Rules 26(a), (b), (d); 30(b)(3); 34(b); *Horgan v. A. T. O., Inc.,* 1977 U.S. Dist. LEXIS 17865, *4 (D. Mass. 1977) ("Rule 26(d) provides for the sequence and timing of discovery by order of the court as justice requires. The purpose of this provision is to eliminate any fixed priority in the sequence of discovery and to make clear and explicit the court's power to establish priority by an order. In supervising discovery, the district court exercises a broad discretion."). This power evident from the permissive language of the Rules:

> • Rule 34(b): the court may allow a "shorter or longer time" for the production of documents;

- Rule 33(b)(3): the court may allow a "shorter or longer time" for the answer to interrogatories;

- Rule 30(b)(2): the court may enlarge or shorten the time for taking depositions.

Rule 16 likewise empowers courts, through pre-trial procedures to simplify and expedite every type of litigation and discourage wasteful pretrial activities. *See* Fed. R. Civ. P. 16(a); Fed. R. Civ. P. 16 (comment) (stating the purpose of Rule 16 as to "stimulate litigants to narrow the areas of inquiry and advocacy to those they believe are truly relevant and material"); L.R. 16.3 (allowing the Court to prepare a discovery schedule and plan as "the presiding judicial officer deems appropriate. . ."); *see also* Fed. R. Civ. P. 26(d) (allowing the Court, upon motion, to make an order of discovery in the "interests of justice"); Fed. R. Civ.P. 26, Commentary to 1993 Amendments, Subdivision (d) (noting that early discovery by court order "will be appropriate in some cases, such as those involving requests for a preliminary injunction . . . .").

Courts have exercised these broad powers to order expedited discovery and set prompt trial dates to allow for timely and just determinations of factual issues where the pace of normal pretrial procedures could prejudice one party or the other. *See Schonbek Worldwide Lighting, Inc. v. Am. Lighting Fixture Corp.*, 2002 U.S. Dist. LEXIS 4761 (D. Mass. 2002) (ordering expedited discovery in trademark infringement and unfair competition action); *In re WebSecure, Secs. Litig.*, 1997 U.S. Dist. LEXIS 19600 (D. Mass. 1997) (ordering expedited discovery in action alleging dissipation of corporations' assets by corporate officers).

## II. The Court Should Order Expedited Discovery and Trial to Avoid Undue Prejudice to ZonePerfect.

This case, by its very nature, demands expedited treatment. First, expedited proceedings are justified given the potential prejudice and irreparable harm to ZonePerfect if the case proceeds under a standard schedule. *See Lugo v. Alvarado*, 819 F.2d 5, 7 (1st Cir.

1987). Hershey and Sears have threatened to launch the "SmartZone" bar by "third quarter 2004." *Complaint,* ¶ 6. As currently promoted, the "SmartZone" bar is to be marketed with labels, marks, and logos strikingly similar to ZONE Marks owned and used by ZonePerfect. *Complaint,* ¶ 6; Exhibit 1. Such conduct on the part of the Hershey and Sears represents a deliberate attempt to cause significant and irreparable consumer confusion regarding ZonePerfect's ZONE Marks and to misappropriate ZonePerfect goodwill and customer base. *Complaint,* ¶ 7. If launch of the "SmartZone" bar is allowed, ZonePerfect will suffer substantial, irreparable harm to its business, as Defendants will be permitted to trade off of the trademarks and goodwill owned and generated by ZonePerfect. *See Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 640 (1st Cir. 1992) ("irreparable harm flows from an unlawful trademark infringement as a matter of law"); *Sears, Roebuck and Co. v. Sears Financial Network, Inc.,* 576 F. Supp. 857, 864 (D.D.C. 1983) ("Trademark infringement and unfair competition are, by their very nature, activities that cause irreparable harm."). Thus, to ensure that ZonePerfect is not irreparably prejudiced by the pace of normal pretrial procedures, it is essential that the matters raised in the Complaint are adjudicated efficiently and *before* the launch of the "SmartZone" bar. *Lugo v. Alvarado,* 819 F.2d at 7 ("[D]iscovery should be carried out sooner rather than later, particularly where, as here, there are claims of irreparable injury.").

Second, the issues presented in the Complaint are discrete and can be investigated and adjudged in a compressed schedule. *See e.g., Aaron v. Mattikow,* 146 F. Supp. 2d 263, 267 (E.D.N.Y. 2001). All counts of ZonePerfect's complaint arise out of the same basic facts -- the use and threatened use of ZonePerfect's trademarks and other assets by Sears and Hershey to develop and market products that unfairly compete with ZonePerfect and misappropriate its goodwill and competitive position. The first seven counts center on ZonePerfect's trademark rights, and will require ZonePerfect to demonstrate that Sears' and Hershey's conduct is likely to cause consumer confusion. *See e.g. Keds Corp. v. Reneed*

*Int'l Trading Corp.*, 888 F.2d 215, 222 (1st Cir. 1989); *Volkswagenwerk Aktiengensellschaft v. Wheller*, 814 F.2d 812, 817 (1st Cir. 1987). The next two counts assert that defendants' public statements and advertisements concerning the new products are knowingly false and misleading in violation of the Lanham Act and that defendants disparage ZonePerfect's products. The contract counts focus on how the above-described conduct breached terms of a stock purchase agreement (Sears) and a confidentiality agreement (Hershey). The next count asserts that Hershey tortiously interfered with the stock purchase agreement between Sears and ZonePerfect. Finally, ZonePerfect alleges that the above-described conduct constitutes unfair and deceptive trade practices in violation of M.G.L. ch. 93A by releasing directly competitive products in connection with trademarks that are confusingly similar to plaintiff's ZONE Marks.

As ZonePerfect's complaint is focused on the discrete issue of Sears and Hershey's use of ZonePerfect's trademarks and other assets, information necessary to establish ZonePerfect's claims is limited in scope and thus can be compiled through a limited amount of discovery. As such, expedited discovery and trial schedule is justified and appropriate for the instant matter. *See e.g., Aaron v. Mattikow*, 146 F. Supp. 2d 263, 267 (E.D.N.Y. 2001) ("This case calls for expedited discovery. The factual issues to be developed during that process are both discrete and limited in scope.").

Finally, while ZonePerfect could, in the alternative, seek expedited discovery and then a preliminary injunction hearing, it seems more efficient for the Court and the parties to consolidate any request for injunctive relief with a trial on the merits. This will provide the parties with a final determination based on evidence that will not then have to be presented a second time.

### III. Proposed Pre-Trial Schedule

As set forth in the Proposed Order attached to Plaintiff's Motion for Expedited Case Management Order and Prompt Trial Date, ZonePerfect proposes the following pre-trial and trial schedule:

1. On or before **Monday, May 3, 2004**: Defendants shall respond to the Complaint in this action.

2. On or before **Monday May 3, 2004**: Exchange automatic disclosures.

3. On or before **Monday May 3, 2004**: Interrogatories and document requests served.

4. Responses to interrogatories and document requests shall be produced within 14 days of service.

5. On or before **Friday, May 7, 2004**: Amendment to Pleadings and Joinder of Additional Parties, if any.

6. On or before **Tuesday, June 1, 2004**: All fact discovery-related motions shall be served.

7. On or before **Tuesday, June 1, 2004**: Rule 26(a)(2) expert designations and related disclosures made.

8. On or before **Monday, June 14, 2004**: Requests for admissions served.

9. On or before **Wednesday, June 30, 2004**: Completion of all discovery.

10. On or before **Friday, July 9, 2004**: Pre-trial submissions presented to Court.

11. On or before **Thursday, July 15, 2004**: Trial scheduled.

## Conclusion

For the reasons set forth above, ZonePerfect respectfully requests that this Court grant this Motion, enter the Proposed Order, expedite proceedings, and set a prompt trial date.

Respectfully submitted,

**ZONEPERFECT NUTRITION COMPANY**

By its attorneys,

_____
Daniel L. Goldberg, BBO #197380
Joshua M. Dalton, BBO #636402
Matthew L. Mitchell BBO #647902
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110
(617) 951-8000

Dated: April 15, 2004.