UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZONEPERFECT NUTRITION COMPANY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 04-10760-REK |
| ) | |
| ) | |
| HERSEY FOODS CORPORATION, ) | |
| HERSEY CHOCOLATE & ) | |
| CONFECTIONERY CORPORATION, and ) | |
| BARRY D. SEARS ) | |
| ) | |
| Defendant. ) | |

## DR. BARRY SEARS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION
## FOR EXPEDITED CASE MANAGEMENT ORDER
## AND JULY, 2004 TRIAL DATE

On Saturday, April 17, 2004, Dr. Barry Sears ("Dr. Sears") was served with a two

hundred and thirty one (231) paragraph complaint in this matter containing fifteen (15)

counts and twenty-eight (28) exhibits. Although the complaint alleges irreparable harm,

the complaint is not accompanied by any motion for a preliminary injunction. Despite

this fact, as well as the fact that the plaintiff has been aware of the allegations raised in

their complaint for months, ZonePerfect Nutrition Company ("ZonePerfect II")[1]

nonetheless seeks an expedited case management order and a trial on the merits on July

15, 2004, approximately two and a half months from today. The proposed scheduling

order and trial schedule seeks to turn on its head the Federal Rules of Civil Procedure and

---

[1]    To avoid confusion, Dr. Sears will refer to the entity owned in part by Christopher Baker as
"ZonePerfect I." Dr. Sears will identify the successor entity (and the plaintiff in this case) as "ZonePerfect
II."

abandon this Court's Local Rules. The proposed scheduling order provides no timetable
for the filing of summary judgment motions or Daubert motions, provides no real
opportunity for Dr. Sears to move to dismiss any of the counts brought against him (let
alone an opportunity for the Court to rule on any such motion), provides no reasonable
opportunity for Dr. Sears to file counterclaims or join other parties and requires that
experts be retained and reports disclosed in a little over a month's time, among several
other unrealistic deadlines. Additionally, the proposed trial date of July 15, 2004 will fall
a week before the Democratic National Convention in Boston, making the expected two
to three week jury trial even more unrealistic.

    Dr. Sears is willing to entertain the concept of an expedited discovery schedule,
so long as the plaintiff appropriately files a motion for a preliminary injunction, and early
discovery is limited to issues related to a preliminary injunction hearing to be held on or
about July 15, 2004. Towards that end, Dr. Sears and co-defendant Hershey proposed
such a schedule to plaintiff's counsel on Friday, April 23, 2004. That schedule is
attached hereto as Exhibit A. This proposal will allow the Court to test the plaintiff's
cries of irreparable harm on an expedited basis while at the same time allowing the
parties to assert counterclaims, third party claims and conduct discovery on the majority
of the claims asserted in this case in a reasonable and rational manner.

    The schedule proposed by the plaintiff is unworkable for a number of reasons.
Among other things, in order to prepare this case properly for a full trial on their fifteen
(15) count Complaint, multiple depositions will have to be taken given plaintiff's
apparent plan to plumb "the intent of the parties" (Complaint, ¶ 60) in the signing of the
October , 2001 Stock Repurchase Agreement. This discovery may include the

2

depositions of attorneys who negotiated the Agreement between Dr. Sears and

ZonePerfect I. Voluminous files will have to be produced, not only including the files of

the attorneys who negotiated the Agreement, but also the files of those who conducted

due diligence for Abbott Laboratories ("Abbott Labs") prior to its purchase of

ZonePerfect I. In addition, given the nature of the allegations made by the plaintiff, what

ZonePerfect I's owners told Abbott Labs about Dr. Sears, his separation from the

company, Zone technology and the nutrition bar market generally may be of significance.

Depositions and files pertaining to these discussions will also have to be thoroughly

discovered prior to the jury trial on the merits. Out of state depositions may be necessary

given the fact that two of the entities involved in this case, Abbott Labs and Hershey

Foods Corporation, have no offices in Massachusetts. In addition, Dr. Sears intends to

file a counterclaim based upon ZonePerfect's misuse of Dr. Sears' name creating the

false impression that Dr. Sears is still in some way associated with and endorsing

ZonePerfect's products. Dr. Sears also expects to conduct discovery to ascertain whether

third party claims are appropriate. Given the substantial and significant discovery

required to prepare properly for a several week jury trial of a fifteen (15) count

Complaint, as well as counterclaims yet to be filed, the expedited discovery and trial

schedule proposed by the plaintiff should not be approved by this Court.

## BACKGROUND FACTS

ZonePerfect's complaint would lead one to believe that upon his separation from

ZonePerfect I in 2001, Dr. Sears signed an agreement giving up his right to use any

ZONE marks on any food products at any time. This, ZonePerfect II alleges, was

ZonePerfect I and Dr. Sears' "intent" (Complaint, ¶ 60) and that "Sears understood and

3

expressly agreed that he was without right to use (or approve anyone else to use) ZONE marks in the sale or distribution of food products." (Complaint, ¶ 63). Of course there is no contractual provision which provides for such a thing, and in fact, Dr. Sears' agreement with ZonePerfect I unambiguously states the exact opposite in declaring, among other things, that ZonePerfect "shall have no rights in or to any inventions, product formulations, developments, innovations, techniques, designs, processes, procedures, improvements, work of authorship created or developed by [Dr. Sears after December 31, 1998] including any intellectual property rights therein or thereto." See Exhibit B, ¶ 2(e) (Stock Repurchase Agreement). In addition, the agreement also unambiguously provides that "there shall be no restrictions, limitations or prohibitions on the activities of [Dr. Sears] or [ZonePerfect] upon consummation of the Closing." Id., ¶ 8(a).

Years earlier, in the spring of 1998, Dr. Sears had a falling out with ZonePerfect I which evolved, at least in part, from Dr. Sears' concerns about some of the newer products being brought to market. Dr. Sears' employment was terminated effective December 31, 1999. See Exhibit B, ¶ 6(b). Despite the allegations in the Complaint that Dr. Sears left ZonePerfect I to pursue "scientific research and writing" (Complaint, ¶ 56), in fact, both parties knew that Dr. Sears intended to separate from ZonePerfect to eventually compete in the nutrition bar industry.

Thereafter, Dr. Sears and ZonePerfect I engaged in a series of long and protracted negotiations, all designed toward enabling Dr. Sears to sever all relationships with ZonePerfect so that he might pursue other opportunities. The October 17, 2001 Stock Repurchase Agreement was the consummation of several years of negotiations,

discussions and agreements, all of which occurred between multiple lawyers and multiple parties. During those negotiations, ZonePerfect I demanded that the agreement include non-competition and non-disparagement clauses binding Dr. Sears. Dr. Sears refused and the provisions were not included in the final agreement.

Despite the fact that Dr. Sears has not worked with ZonePerfect for over five (5) years, ZonePerfect continues to utilize Dr. Sears' name in attempting to confuse the public into believing that Dr. Sears approves of and endorses the ZonePerfect product line. Attached hereto as Exhibit C is a copy of certain pages of ZonePerfect's website which, in addition to offering Dr. Sears' books for sale, calls itself "the official website of the Zone diet," a diet created by and inextricably connected with Dr. Barry Sears.

## ARGUMENT

The plaintiff's proposed discovery schedule assumes that virtually no discovery will be required, in part, because, they apparently contend, this case relies upon a single contract executed by Dr. Sears in 2001. This case is about much more than a single document.

## I.   THE DISCOVERY WHICH WILL *ACTUALLY* BE REQUIRED PRIOR TO A TRIAL ON THE MERITS

As set forth above, the Stock Repurchase Agreement between Dr. Sears and ZonePerfect I was negotiated over several years by multiple law firms as well as the parties themselves. Despite the plaintiff's suggestion to the contrary, the Stock Repurchase Agreement does not restrict Dr. Sears from utilizing the ZONE mark. As a result, ZonePerfect II apparently plans to argue that such a restrictive limitation was "the parties' intent" (Complaint, ¶ 60) and that the agreement is ambiguous. Discovery concerning plaintiff's contention in this regard will be substantial. This will include

5

depositions of the principals involved in the negotiations, as well as lawyers from Testa,

Hurwitz & Thibeault, LLP, who represented Dr. Sears, and lawyers from the Philadelphia

office of Dechert, Price & Rhodes, as well as a lawyer from Hale and Dorr, who

represented ZonePerfect I. Each of these individuals will have to be deposed if "the

parties' intent" is at the heart of plaintiff's allegations, as it appears to be.

In addition, before a trial on the merits, discovery will be necessary on the due

diligence performed by Abbott Labs prior to its purchase of ZonePerfect I, as well as

those communications, both written and oral, made by ZonePerfect I to Abbott Labs, both

before, during and after the sale was consummated. This evidence is likely to reveal that

either ZonePerfect I's owners misled Abbott Labs about important facts relating to Dr.

Sears, his Stock Repurchase Agreement, the nutrition bar industry and Zone technology

or that Abbott Labs failed to adequately perform its due diligence in connection with the

purchase. Because Abbott Labs is a corporation located in Illinois, out of state

depositions and document productions are likely to be necessary.

These are but a few examples of the voluminous and plainly relevant discovery

needed to prepare this case properly for trial on this fifteen (15) count Complaint.

ZonePerfect's proposed schedule would unfairly and improperly prejudice the defendants

as it would be virtually impossible to conduct the above referenced discovery in less than

two months' time.

## II.   THE CASES CITED BY THE PLAINTIFF DO NOT SUPPORT A REQUEST FOR AN EXPEDITED TRIAL DATE

The cases cited by the plaintiff in support of their request for a trial on the merits

in approximately eighty (80) days do not support their extraordinary request. In Re

Websecure, Inc., 1997 U.S. Dist. LEXIS 19600 (D. Mass. 1997) (O'Toole, J.) for

6

example, granted expedited discovery only as to a narrow, limited issue which had direct bearing on whether injunctive relief was appropriate. No early trial date was set and the Court did not order all discovery to be completed within weeks. ZonePerfect contends that Lugo v. Alvarado, 819 F.2d 5, 7 (1st Cir. 1987) stands for the position that expedited proceedings are warranted if the plaintiff can demonstrate potential prejudice and irreparable harm. The cited case does not stand for this proposition. In fact, the case involved "extensive discovery" spanning seven (7) months and the appeal of a decision by the District Court not to stay discovery during the pendency of a motion for summary judgment. Id., at 6. The Court in Aaron v. Mattikow, 146 F. Supp 2d 263 (E.D.N.Y. 2001) ordered limited discovery on a discrete issue two years after the plaintiff had filed the complaint. Schonbek Worldwide Lighting, Inc. v. Am. Lighting Fixture Corp., 2002 U.S. Dist. LEXIS 4761, *2 (D. Mass. 2002) ordered an "expedited trial" (without explanation) one year after the case had been commenced.

ZonePerfect also cites a series of cases which purport to discuss irreparable harm in the context of trademark infringement cases. These cases have no bearing on whether the Court should order an expedited discovery schedule and an early trial date because each of these cases specifically involved a plaintiff moving for a preliminary injunction and did not involve any sort of request for an expedited discovery and/or full trial schedule. See Societe Des Produits Nestle, S.A. v. Casa Helventia, Inc., 982 F.2d 633 (1st Cir. 1992) (discussing "irreparable harm" in trademark case in the context of a preliminary injunction); Sears, Roebuck & Co. v. Sears Financial Network, Inc., 567 F. Supp. 857 (D.D.C. 1983) (another case cited by ZonePerfect involving the request for a preliminary injunction); The Keds Corp. v. Renee International Trading Corp., 888 F.2d

7

215 (1st Cir. 1989) (same); <u>Volkswagenwerk Aktiengesellshaft v. Wheller</u>, 814 F.2d 812
(1st Cir. 1987) (same).

ZonePerfect fails to cite a case allowing for an expedited discovery schedule and
trial date in circumstances such as those present here because to grant such a request
would be virtually unprecedented. If ZonePerfect believes that it is likely to succeed on
the merits of its claims and contends that the defendants' actions will cause irreparable
harm, then ZonePerfect should file a motion for a preliminary injunction. Dr. Sears'
proposed schedule provides ZonePerfect with just that opportunity. Quite simply,
unsubstantiated cries of irreparable injury are not unique to this case. These allegations
are made in virtually every trademark case. ZonePerfect's discovery and trial schedule
effectively requests that the Court adopt a new Local Rule for intellectual property cases
allowing for limited discovery and trial dates occurring within three (3) months of the
filing of a complaint. There is simply no basis for the creation of a new local rule in this
regard.

## CONCLUSION

For the forgoing reasons, Dr. Sears respectfully requests that the Court deny
ZonePerfect's request for an expedited discovery and a trial date and enter the scheduling
order attached hereto as <u>Exhibit A</u>.

BARRY D. SEARS,

By his attorneys,

Lisa G. Arrowood (BBO#022330)
Ian Crawford (BBO#544475)
David H. Rich (BBO #634275)
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 720-2626

DATED: April 23, 2004

9