# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ZONEPERFECT NUTRITION COMPANY,

               Plaintiff,

               v.

HERSHEY FOODS CORPORATION, HERSHEY
CHOCOLATE & CONFECTIONARY
CORPORATION, and BARRY D. SEARS,

               Defendants.

:   CIVIL ACTION
:   NO.: 04-10760 (REK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THE HERSHEY DEFENDANTS' MEMORANDUM OF
## LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
## EXPEDITED CASE MANAGEMENT ORDER AND PROMPT TRIAL DATE

Defendants Hershey Foods Corporation and Hershey Chocolate & Confectionery

Corporation (collectively, "Hershey") submit this memorandum in opposition to the motion of

plaintiff ZonePerfect Nutrition Co. for entry of an expedited case management order (including

expedited discovery) and for a trial date less than three months from now on the grounds that

plaintiff has made no showing to support, and is not entitled to, such extraordinary expedition.

Plaintiff commenced this action less than two weeks ago and has failed to file a motion

for a preliminary injunction. Plaintiff alleges in its 15-count complaint and memorandum that it

is suffering irreparable harm as a result of use of the *SmartZone* trademark and alleged false

advertising and other assorted alleged misconduct by defendants. Yet it admittedly has known

about Hershey's planned use of the trademark since February 9. In other words, plaintiff has

taken almost as long to file its lawsuit as it is willing to grant defendants for the *entire* litigation

of this case, from pleadings through discovery and a jury trial. Particularly given the importance of the scope of third party use of the term "zone" as a trademark, and the likelihood of the filing of counterclaims, plaintiff's extraordinary request would greatly prejudice defendants and deny them the ability to take discovery and defend themselves in accordance with due process.

Hershey does not object – indeed, would welcome – an early preliminary ruling on plaintiff's claims. At the same time, however, we know of no basis for permitting expedited discovery (let alone the scheduling of a jury trial in under three months) where, as here, plaintiff has not filed a motion for preliminary injunction, and has waited two months to file suit. Plaintiff should be required to file a motion for preliminary injunction before it is awarded expedited discovery. The motion will frame the issues to be decided, thereby aiding the parties and the Court in determining which factual issues are in genuine dispute, and helping to define and narrow the discovery that is appropriate. Significantly, we know of no authority, and plaintiff has cited none, in which a court has held that the court and defendants should be subjected to the extraordinary time, burden and expense of expedited discovery by a plaintiff, who, despite alleging trademark infringement and irreparable harm, has not bothered to move for a preliminary injunction or otherwise sought to make an evidentiary showing that it needs expedited discovery and relief.

In accordance with their willingness to have a preliminary ruling on plaintiff's claims, defendants advised plaintiff that they would agree to expedited discovery if plaintiff filed a motion for a preliminary injunction, as trademark plaintiffs who claim irreparable injury typically do. In particular, defendants have proposed a schedule for expedited discovery and briefing culminating in a preliminary injunction hearing on July 15 (and, if necessary, July 16). (*See* Exhibit A hereto). The parties' counsel have been exchanging telephone calls, but they have been unable

2

to speak with each other with respect to the proposal. Hopefully, they will be able to confer in advance of the hearing tomorrow.

## BACKGROUND

### A.    Plaintiff's Complaint and Motion

Plaintiff filed its 15-count complaint on April 15, 2004, alleging that defendants' proposed use of the trademark *SmartZone* (which, according to the complaint (¶ 84), defendants formally announced more than two months earlier, on February 9, 2004), would infringe plaintiff's purported trademark rights, and that defendants had committed false advertising, unfair competition, dilution, breach of contract and multifarious other alleged misconduct.[1] Plaintiff further asserts that defendants' actions are causing it "irreparable harm," "irreparable injury" and "irreparable damage," entitling it to preliminary and permanent injunctive relief. (Complaint ¶¶ 8, 122, 133, 142, 149, 197, 217; Prayer For Relief, ¶¶ A, G, K, O). Together with its complaint, plaintiff filed the instant motion seeking expedited discovery and a July 15, 2004 jury trial on each of its fifteen alleged claims for relief.

Plaintiff's complaint and memorandum are notable for what they do *not* contain. Thus, although plaintiff acknowledges that Dr. Sears developed the "zone" diet and authored several books regarding the zone diet (including "The Zone"), it attempts to paint a picture in which it owns all "'ZONE' trademarks" and the "'Zone' name." (*See, e.g.*, Complaint ¶¶ 1-2). What plaintiff fails to disclose in its complaint and memorandum, however, is that its 2001 contract

---

[1]    In particular, plaintiff alleges claims for violation of Sections 32, 43(a) (two counts) and 43(c) of the Lanham Act and M.G.L. c. 110B, c 93A, common law trademark infringement, commercial disparagement, breach of contract (two counts), tortious interference with contractual relations, breach of the covenant of good faith and fair dealing (two counts), and two "claims" for declaratory judgment.

with Dr. Sears – in which it transferred *back to Dr. Sears* almost all of the rights Dr. Sears had

transferred to plaintiff in 1996 – does *not* grant plaintiff the rights to all ZONE trademarks. (*Id.*

Ex. 19 ¶¶ 1(a), 2(b), Ex. 4 ¶¶ 1.1(p)(10), 1.1(p)(11), 4.1). Thus, nowhere does the contract state

that plaintiff would have the right to the word "zone," or that it would have the right to *all* marks

that contain the word "zone" – let alone the right to the mark *SmartZone*. Nor could the contract

have so provided given the widespread use of "zone" as a trademark alone or as an element of a

trademark, including in connection with food and related products. Moreover, the contract affir-

matively acknowledges that Dr. Sears has "exclusive ownership" of the copyrights for "The

Zone," "Mastering the Zone" and all other books Dr. Sears has written, and provides that plain-

tiff "shall have *no* rights in or to *any* inventions, product formulations, developments, innova-

tions, techniques, designs, processes, procedures, improvements, works of authorship created or

developed by" Dr. Sears after December 31, 1998, "*including any intellectual property rights*

*therein or thereto.*" (*Id.* Ex. 19 ¶ 2(e)) (emphasis added). The contract also provided that plain-

tiff could only use Dr. Sears' "name, likeness, image, voice, signature or picture" to promote its

products until July 1, 2001 (and for three months thereafter to dispose of its inventory). (*Id.* Ex.

19 ¶ 5(a)). In addition, the contract provides that except as provided in the contract, "there shall

be *no restrictions, limitations or prohibitions* on the activities" of Dr. Sears. (*Id.* Ex. 19 ¶ 8(a))

(emphasis added). Significantly, the contract does *not* contain a non-compete clause barring Dr.

Sears from competing with plaintiff or any provision prohibiting him from endorsing a com-

peting product.

As for plaintiff's agreements with Hershey, there is no limitation on the use of any trade-

marks or any conduct Hershey may take that is not based on confidential information obtained

from plaintiff in the course of Hershey's consideration of whether to submit a bid to purchase

plaintiff. As the evidence will show, Hershey used no confidential information of plaintiff.

Rather, the *SmartZone* product and trademark were independently developed.

**B.    Defendants' Suggested Schedule**

On April 23, 2004, defendants' counsel advised plaintiff's counsel that defendants could

not agree to expedited discovery where plaintiff had not made a preliminary injunction motion or

otherwise attempted to demonstrate the need for expedition, and stated that, if plaintiff filed a

preliminary injunction motion, defendants would agree to expedited discovery limited to the

issues relevant to the motion. Later that day, defendants proposed a schedule pursuant to which

Initial Disclosures would be exchanged on May 10, 2004, depositions would be completed by

June 25, 2004, and the preliminary injunction hearing would be held on July 15 (and July 16 if

necessary). (Ex. A hereto). To expedite the hearing, the parties would submit their witnesses'

direct testimony by affidavit. The complete schedule defendants proposed is set forth below:

| | |
|---|---|
| Immediately | The parties shall enter into a protective order governing the confidentiality of documents and deposition testimony. |
| 5/3/04 | Plaintiff shall serve its motion for a preliminary injunction and supporting memorandum, but not affidavits or other evidence. Defendants shall file their memorandum in response to the motion and plaintiffs shall serve their reply memorandum, if any, within the time periods provided in Local Rule 7.1. |
| 5/7/04 | Plaintiff shall serve the expert report of any survey expert (the parties shall be limited for purposes of the preliminary injunction to two experts per side). |
| 5/10/04 | Defendants shall respond to the complaint. |
| 5/10/04 | The parties shall exchange their initial disclosure information and documents. |
| 5/12/04 | The parties shall exchange document requests in the form of one page letters. These letter requests shall be treated as document demands under Rule 34, Fed. R. Civ. P. After receiving these requests, the parties shall |

confer no later than May 15, 2004 to discuss any objections to the requests. There shall be no interrogatories with respect to the preliminary injunction stage of the proceeding.

5/14/04        Plaintiff shall serve any expert reports not relating to surveys.

5/27/04        The parties shall produce responsive documents and serve any objections to document requests.

6/1-25/04      Depositions shall take place and shall be limited to five fact witnesses per side. Each deposition shall take place at the location of the witness unless otherwise agreed by the parties and shall not exceed one day of seven hours.

6/18/04        Defendants shall serve any survey expert reports of their own or in rebuttal.

6/18/04        Defendants shall serve any rebuttal experts reports not relating to surveys.

6/18-25/04     Depositions of experts shall take place and shall not exceed one day of seven hours each.

6/18/04        A status conference shall take place with the Court at __ m.

7/02/04        Plaintiff shall submit the direct testimony of its witnesses in the form of affidavits and shall also submit proposed findings of fact and conclusions of law.

7/09/04        Defendants shall submit the direct testimony of their witnesses in the form of affidavits and shall also submit proposed findings of fact and conclusions of law.

7/12/04        The parties shall designate all witnesses they intend to cross-examine at the preliminary injunction hearing.

7/15-16/04     Preliminary injunction hearing. The direct testimony at the preliminary injunction hearing shall be in the form of the affidavits described above, and the only live testimony will be cross-examination of affiants. (Ex. A).

## ARGUMENT

### PLAINTIFF'S MOTION SHOULD BE DENIED
### AND DEFENDANTS' PROPOSAL FOR AN ORDERLY
### PRELIMINARY INJUNCTION SCHEDULE SHOULD BE ADOPTED

**A.    The Governing Legal Standard**

Numerous courts that have considered requests for expedited discovery have held that in order to obtain such discovery, a party must make a showing akin to the showing on a preliminary injunction motion, that (1) the party faces irreparable injury; (2) the party has some probability of success on the merits; (3) there is a connection between the expedited discovery sought and the avoidance of irreparable injury; and (4) the injury that will result without expedited discovery is greater than the injury the defendant will suffer if expedition is granted. *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982); *see also Gucci Am., Inc. v. Daffy's, Inc.*, 2000 WL 1720738, \*5-6 (D.N.J. Nov. 14, 2000) (following *Notaro*); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613-14 (D. Ariz. 2001) (citing *Notaro* approvingly and adopting "good cause" standard). Indeed, even those courts that do not require the above showing have denied motions for expedited discovery where the plaintiff, as here, had failed to file a motion for a preliminary injunction, or granted motions only where "narrow categories" of documents were sought in preparation for the Case Management conference and had been previously sought informally from the defendants "for over a year." *See, e.g., Entm't Tech. Corp. v. Walt Disney Imag.*, 2003 WL 22519440, \*5 (E.D. Pa. Oct. 2, 2003); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276-77 (N.D. Cal. 2002).

Plaintiff has not even attempted to make a showing in support of its motion. It merely alleges, *ipse dixit*, that the name of Hershey's new nutritional bar *SmartZone* is "likely to cause significant and irreparable consumer confusion." (Pl. Mem. 4). Plaintiff fails to provide any

authority for the proposition that a plaintiff may obtain expedited discovery without moving for a preliminary injunction merely by indicating that such discovery would be "more efficient for the Court and the parties." (Pl. Mem. 7). Nor has it cited any case where a court ordered expedited discovery *and a (jury) trial* on anywhere near the kind of truncated schedule that plaintiff proposes here. And, in all events, because plaintiff has failed to specify the scope or identity of the discovery it seeks, defendants and the Court cannot tell if the discovery is reasonable under the circumstances. *See, e.g, Semitool,*, 208 F.R.D. at 276-78 ("narrow categories" of documents ordered produced).

Notwithstanding that it has had over two months to prepare its suit, plaintiff has failed to file a motion for preliminary injunction. We are unaware of a single trademark case in which a federal court ordered expedited discovery where the plaintiff had neither moved for preliminary injunctive relief, nor made some *prima facie* showing, akin to the showing for a preliminary injunction, that good cause existed for expedited discovery. To the contrary, courts have *rejected* requests for expedited discovery in trademark cases where, as here, the plaintiff had not filed a preliminary injunction motion, either before seeking expedited discovery or contemporaneously with a motion for expedited discovery. *See, e.g., Gucci,* 2000 WL 1720738, at *6 ("The instant application for expedited discovery is not in aid of an impending preliminary injunction hearing. Instead, the motion stands alone."); *Qwest Communs. Int'l, Inc. v. WorldQuest Networks, Inc.,* 213 F.R.D. 418, 419 (D. Colo. 2003) (denying motion for expedited discovery where plaintiff had not moved for preliminary injunction); *Special Situations Cayman Fund v. Dot Com Entm't Group,* 2003 WL 23350128, *2 (W.D.N.Y. Dec. 5, 2003) (denying motion for expedited discovery when motion for preliminary injunction was denied).

Nor do the few cases on which plaintiff relies support the extraordinary expedition it seeks here. In *Lugo v. Alvarado*, 819 F.2d 5 (1st Cir. 1987), the Court did not even address the issue of expedited discovery. Rather, in affirming denial of the defendant's motion to stay discovery, the Court noted that the discovery cut-off was *seven months* after the case had been commenced – hardly a schedule that supports plaintiff's request here, for a jury trial *three months* after the complaint was filed. In *Schonbek Worldwide Lighting, Inc. v. Am. Lighting Fixture Corp.*, 2002 U.S. Dist. LEXIS 4761 (D. Mass. March 19, 2002), the court, in denying cross-motions for summary judgment, stated in passing that the trial had been "set . . . on an expedited basis," with no indication as to the basis on which expedition was granted or even whether the parties had agreed to it. Moreover, the "expedited" trial date to which the court referred was held at least one *year* after the case had been commenced. *See id.* at *2. In *Aaron v. Mattikow*, 146 F. Supp.2d 263 (E.D.N.Y. 2001), the court granted limited expedited discovery regarding a single discrete issue *25 months* after plaintiffs filed the complaint. As for *In re WebSecure, Secs. Litig.*, 1997 U.S. Dist. LEXIS 19600 (D. Mass. Nov. 26, 1997), there, the plaintiff, unlike plaintiff here, had *already* filed a preliminary injunction motion. In addition, the expedited discovery was limited to the "narrow issues" relevant to the motion, and there was no indication in the decision as to the scope of the discovery or the time period during which the discovery was to be conducted. *Id.* at *13-14. In short, plaintiff has cited no authority to support the extraordinary expedition it seeks here.

**B.    Plaintiff Should Be Required, as a Condition for Ordering Expert Discovery, to File a Motion for a Preliminary Injunction**

A preliminary injunction motion filed prior to expedited discovery, as normally occurs in trademark infringement actions, would permit the Court and the parties properly to evaluate

which issues are relevant to the motion and to narrow and to focus the expedited discovery. This narrowing process is particularly important given plaintiff's wide-ranging 15-count complaint. There is no basis for plaintiff to contend that it will be prejudiced if it is required to file a preliminary injunction motion now. If it is unable to muster what it believes would support a claim of likelihood of success on the merits and a finding of irreparable injury as required for a preliminary injunction, then by definition there is no basis for the great rush to trial that it seeks to impose on defendants and the Court. By contrast, it would be extremely prejudicial and burdensome for defendants to be required to engage in expedited discovery with respect to each of the many issues raised by plaintiff's 15-count complaint and to complete such discovery – including expert discovery – in *two months* and then to conduct an *immediate jury trial*. Far more time is necessary to take third party discovery as to the extensive third-party use of the mark "zone" in connection with food and related products, as well as to prepare expert reports, including on damage issues, and to conduct discovery with respect to defendants' anticipated counterclaims.

Moreover, on its face, the expedited case management order plaintiff proposes is seriously flawed and unworkable. It requires that all "fact discovery-related motions" be served a month *before* discovery is completed. It requires the simultaneous exchange of expert reports, instead of requiring that plaintiff files its reports first and that defendants and their experts then have sufficient time to evaluate those reports and file reports in response, which is the standard sequencing in case management orders. Plaintiff's proposed order also fails to provide for the making and consideration of *Daubert* and summary judgment motions. In addition, it fails to provide any time for the exchange of trial witness lists, exhibits, deposition designations, and objections and motions relating to them. And, as if all of this were not enough, it fails to provide

for the adjudication of counterclaims, including counterclaims that involve the addition of parties.

Plaintiff's failure to file a preliminary injunction motion – even though it has had over two months to prepare one – suggests that it does not have sufficient evidence to seek preliminary injunctive relief, and that it hopes to use discovery to find a basis for a motion. Simply stated, plaintiff is unlikely to prevail on the merits of its claims.[2] To begin with, there is no basis for the suggestion that defendants have agreed not to use the word "zone" or not to compete with plaintiff. Moreover, plaintiff's claimed marks "ZONE," "ZONE DIET" and "ZONE PERFECT," all use the descriptive word "zone" to refer to a style of diet – a diet that Dr. Sears admittedly developed. These marks are, thus, weak marks, which is confirmed by the numerous third parties who use the term "zone" alone or as an element of a trademark in connection with food and other related products (*e.g.*, "Ezone bars," "BodyZone Nutrition Bars," "Zone Gourmet," "Zone Diet Shop," "zonebalance.com"). As a result, plaintiff's claimed marks are entitled, at best, to a very narrow scope of protection. Further indicating the absence of any likelihood of confusion is that the parties' product packages are distinctly different in appearance and Hershey's package prominently uses Hershey's well-known house mark, HERSHEY'S. (*See* Complaint Ex. A).

Under similar circumstances, courts repeatedly have held that no consumer confusion is likely and have rejected claims of trademark infringement. As the First Circuit has stated, "[t]he law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *I.P. Lund Trading Co. v. Kohler*, 163 F.3d 27, 43 (1st Cir. 1998). For instance, in

---

[2]    We do not purport, at this juncture, to set forth a complete statement of the defects of plaintiff's claims, but merely to highlight the more obvious weaknesses of its case.

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487-92 (1st Cir. 1981), the Court affirmed a grant of summary judgment to the trademark defendant, holding that the use of the word "alpha" to designate a series of cameras did not infringe plaintiff's "alpa" trademark where the word "alpha" was always used as part of a phrase in which, as here ("perfect" vs. "smart"), the other terms used in the respective marks were different and where, as here ("Hershey's"), the name and/or logo of the manufacturer was clearly displayed.  Similarly, in *R.G. Barry Corp. v. A. Sandler Co., Inc.*, 406 F.2d 114 (1st Cir. 1969), the Court affirmed judgment for the defendant, holding that defendant's use of "Angel Touch" in connection with women's pumps and step-ins did not infringe plaintiff's "Angel Treads" and "Angelite" marks for slippers.  The Court explained that the "conjunction" of the parties' housemarks with the contested trademarks on the products to be of "exceptional significance," stating that "the housemark rather than the trademark or product seems to have been relied upon to reveal the source of origin."  *Id.* at 116.  Similarly, in *Northern Trust Corp. v. Northern Bank & Trust Co.*, 1991 WL 346397 (D. Mass. Apr. 7, 1992), the court denied a preliminary injunction motion because, *inter alia,* "while there is some similarity [between the names of the two banks, "Northern Trust" and "Northern Bank & Trust"]," the defendant used a fanciful "N" in "Northern" and at least thirty other banks also used "Northern" in their name, making "Northern Trust" a weak mark.  *Id.* at *2, *5.[3]

---

[3]    *See also Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1245, n.4 (9th Cir. 1984) (AUDITOR'S and AUDITOR'S FINEPOINT distinguishable because they were always used in conjunction with prominent house marks); *Universal Money Centers, Inc. v. AT& T Co.*, 22 F.3d 1527, 1531 (10th Cir. 1994) (UNIVERSAL MONEY, UNIVERSAL MONEY CARD, and UNIVERSAL MONEY CENTER not confusingly similar to THE AT&T UNIVERSAL CARD "especially in light of the distinctive AT&T house mark prominently displayed on the front of AT&T's card").

Against this weight of authority, plaintiff makes the conclusory assertion that Hershey's

*SmartZone* is "likely to cause significant and irreparable consumer confusion" (Pl. Mem. 4), and

presumably speculates that discovery might unearth some evidence to support its claims. Plain-

tiff should be required to put forth a stronger showing than such speculation to justify the burden

and expense of expedited discovery. It should be required to move for a preliminary injunction

and lay out its best case so that the parties and Court can understand what discovery is needed to

resolve plaintiff's yet-unfiled motion, and can efficiently and expeditiously complete that

discovery.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for entry of an expedited case management

order and prompt trial date should be denied, plaintiff should be required to file a motion for

preliminary injunction before any expedited discovery takes place in this action, and defendants'

proposed schedule for the litigation and trial of that motion should be adopted.

Dated: April 26, 2004

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.

Of Counsel

    Thomas A. Smart
    Richard A. De Sevo
    Janeen F. Berkowitz
    KAYE SCHOLER LLP
    425 Park Avenue
    New York, NY 10022
    (212) 836-8000
    (212) 836-7154 (fax)

Seni M. Adio, BBO #566709
Matthew Hurley, BBO #643638
One Financial Center
Boston, MA 02111
(617) 542-6000
(617) 542-2241 (fax)

*Attorneys for Defendants Hershey*
    *Foods Corporation and Hershey*
    *Chocolate & Confectionery Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of April, 2004, I caused a true copy of *Defendants'*

*Memorandum of Law in Opposition to Plaintiff's Motion for Expedited Case Management Order*

*and Prompt Trial Date* to be served by hand delivery on:

        Daniel L. Goldberg, Esq.
        Bingham McCutchen LLP
        150 Federal Street
        Boston, MA 02110

        Lisa G. Arrowood, Esq.
        Todd & Weld LLP
        28 State Street
        31st Floor
        Boston, MA 02109

        *Matthew C. Hurley*
        Matthew C. Hurley