# TESTA, HURWITZ & THIBEAULT, LLP

ATTORNEYS AT LAW

125 HIGH STREET
BOSTON, MASSACHUSETTS 02110-2704

OFFICE (617) 248-7000

FAX (617) 248-7100

Direct Dial (617) 248-7465

E-Mail prickett@tht.com

## CONFIDENTIAL

May 22, 2000

**By Overnight Mail**

Christopher G. Karras, Esq.
Dechert Price & Rhoads
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793

    RE:    Eicotech Corporation/ZonePerfect Nutrition Company

Dear Mr. Karras:

    We are writing on behalf of Barry D. Sears, Ph.D, Douglas Sears, and Surfactant Technologies Inc. ("STI"), shareholders of Eicotech Corporation, purportedly now known as ZonePerfect Nutrition Company (the "Company"). Enclosed are copies of the following:

1. Petition for Cancellation of Registration No. 2,298,235 and

2. Petition for Cancellation of Registration No. 2,335,083.

    Christopher Baker, as the President, CEO, Chairman of the Company, controlling voting shareholder, and, to our clients' knowledge, the sole director of the Company (unless Mr. Baker has selected other directors), owes stringent and well-established fiduciary duties under applicable law to Dr. Barry Sears, Mr. Douglas Sears, and STI. Please be advised that our clients have serious concerns regarding certain actions taken by Mr. Baker and certain other events, and that they fully intend to take whatever steps that are necessary and appropriate to enforce their rights.

    These serious concerns include:

1. **The April 24, 2000 Notice of Action**

    Dr. Sears, Mr. Sears, and STI have received the Notice of Action by Less than Unanimous Written Consent of Stockholders dated April 24, 2000 (the "Notice"). We understand that, by a majority vote, Mr. Baker has created a new class of common stock consisting of 7.5 million shares of Class C Common and has approved the ZonePerfect Nutrition Company 2000 Stock Option Plan (the "Option Plan"). The Option Plan provides that options

TESTA, HURWITZ & THIBEAULT, LLP

Christopher G. Karras, Esq.
May 22, 2000
Page 2

for up to 1.5 million shares of Class C Common may be issued to the directors, employees, and consultants of the Company, of which options for up to 375,000 shares may be issued in any calendar year. To put these figures into perspective, there are currently only 2,000 shares of common stock outstanding in total that represent 100% ownership of the Company. Issuance of even a tiny percentage of these new Class C shares for stock options will cause a massive and, we believe, unlawful dilution of the majority equity interest currently held by Dr. Sears, Mr. Sears, and STI. In the first year alone, the Option Plan authorizes the potential dilution of our clients' equity interest from a majority position of 58.5% to *less than one third of a percentage point.* Typically, companies implementing a stock option plan authorize the issuance of options for additional stock equal to from 5% to 20% of the total outstanding stock. Here the authorized Class C Common available for stock options is *75,000%* of the total outstanding stock. This ratio is radically and alarmingly out of line with normal practice and, when combined with the Company's existing Charter provision prohibiting stock splits, demonstrates that the real purpose of the new Option Plan likely is to massively and unlawfully dilute our clients' equity interest. Moreover, any future issuance of stock options to Mr. Baker as part of this scheme would be an "interested director" transaction and would be subject to the rigorous "entire fairness" standard of review. Again, as the controlling shareholder of a close corporation and an interested director, Mr. Baker owes stringent fiduciary duties to Dr. Sears, Mr. Sears, and STI.

We also note that the shareholder approval is deficient in that the Option Plan fails to define in a most material respect the key term "Fair Market Value" as used in the Option Plan. The definition of "Fair Market Value" as it applies to the privately-owned Company refers to a "['Fair Market Value Price' as defined in the [Securities Purchase and Holders Agreement.]]" Option Plan, p. 2. Our clients are not signatories to a Securities Purchase and Holders Agreement, and the document was not attached to the Notice. As the "Exercise Price" is based upon "Fair Market Value," our clients have no way of knowing what exercise price the Option Plan permits. The brackets indicate that this Option Plan is incomplete in a most material respect.

As you know, Mr. Baker removed Dr. Sears and Mr. Sears as directors in December 1999, and they were told at that time that their removal was based upon their supposed "disruptive" influence upon the Company's flow of business. (See Mr. Baker's December 14, 1999 correspondence to Dr. Sears, attached hereto as Exhibit A.) We believe that their removal was accomplished for the purpose of fulfilling a larger fraudulent scheme, orchestrated by Mr. Baker. First, their removal was an unlawful act of retaliation against the Sears' in response to Dr. Sears' repeated warnings and attempts to cause the Company to produce bars that comply with applicable federal and state law, the Zone Diet principles of insulin control as represented by the Company to the public, and the Company's obligations under the Stock Purchase and Holders Agreement dated September 19, 1996 (the "Stock Purchase Agreement"). (See Dr. Sears' January 10, 2000 letter to Mr. Baker, attached hereto as Exhibit B.) Second, as discussed above, we believe their removal as directors was part of an unlawful scheme to change the capital structure and relative ownership of the Company through the massive issuance of overwhelmingly dilutive stock options in amounts that are unlawful breaches of Mr. Baker's

991860-4

TESTA, HURWITZ & THIBEAULT, LLP

Christopher G. Karras, Esq.
May 22, 2000
Page 3

fiduciary duties. We therefore believe that the representations made and the actions taken surrounding Dr. Sears' and Mr. Sears' removal as directors were fraudulent.

2. **Mislabeling of the Company's Products**

Our clients have also learned that Company products do not contain a key ingredient identified in the product labeling. We have determined that the Omega 3 essential fatty acid EPA is not present in the Eicotech and ZonePerfect bars. Mislabeling in connection with the use of Dr. Sears' name and likeness constitutes a breach and violation of, among other things, the Stock Purchase Agreement. Dr. Sears could not and did not authorize the use of his name and likeness for a mislabeled product. See Exhibit B. Shortly after Dr. Sears last visited the Company and raised concerns regarding the quality of the Company's products, Mr. Baker removed Dr. Sears and Mr. Sears as directors of the Company. His actions support our belief that Mr. Baker is not only aware of this mislabeling, but has been actively attempting to conceal it.

3. **Nonconformance of the Company's Product with Zone Principles**

In addition to the mislabeling of the products discussed above, Dr. Sears has repeatedly warned Mr. Baker that the products do not conform to the Zone Diet principles of insulin control developed by Dr. Sears. See Exhibit B. The Company's continuing use of Dr. Sears' name and likeness in connection with the products is unlawful for this reason as well. A product labeled "ZonePerfect" literally claims to be the "perfect" embodiment of the Zone Diet created by Dr. Sears. Since the Company's products do not in fact conform to Dr. Sears' Zone Diet principles, the Company's product packaging is a false description of the products in violation of the Lanham Act, 15 U.S.C.A. § 1125(a). As Dr. Sears has not consented to the use of his name or likeness in connection with such a nonconforming and unlawful product, the product packaging is also a violation of his common law privacy rights and amounts to false publicity in violation of Mass. Gen. Laws c. 214, § 3A and constitutes a continuing tort subjecting both Mr. Baker and the Company to significant damages.

4. **Fraudulent Registration of Trademarks in Connection with Dr. Sears' Books**

Our clients have also discovered that the Company did not, contrary to Mr. Baker's prior express assurances, withdraw its applications for registration of the trademarks "Zone," as used in Dr. Sears' diet and nutrition books, and the Zone logo, as it appears on those books. In fact, registrations have now issued to the Company for "Zone" and the Zone logo in connection with Dr. Sears' books. As we have previously pointed out, Dr. Sears did not transfer his rights in these marks to the Company. Each and every trademark transferred by Dr. Sears was specifically and precisely listed in the Stock Purchase Agreement, and no rights of Dr. Sears in "Zone" or any Zone logo, including the Zone marks in connection with the books, were included. Stock Purchase Agreement I (p) (10)-(11). And yet, Mr. Baker, on behalf of the Company, fraudulently submitted these books of Dr. Sears as supporting material in its applications for

991860-4

TESTA, HURWITZ & THIBEAULT, LLP

Christopher G. Karras, Esq.
May 22, 2000
Page 4

registration of the marks. For these reasons, Dr. Sears has filed the enclosed petitions for cancellation of the fraudulently issued registrations.

5.   **Mr. Baker's Interest in C.P. Baker & Company**

Finally, the Company contracts with C.P. Baker & Company ("C.P. Baker"), a management company in which Mr. Baker holds a controlling interest. Mr. Baker's interest in C.P. Baker makes him an "interested director" in any transactions between the Company and C.P. Baker. These transactions would also therefore be subject to a stringent review, and may well constitute additional breaches by Mr. Baker of fiduciary duties owed to the Company and the shareholders. Mr. Baker's failure to provide books and records, including appropriate detailed financial statements, to Dr. Sears and Mr. Sears during their tenure as directors of the Company -- in flagrant disregard of their inspection rights as directors -- raises further serious questions.

Our clients intend to enforce their contractual, statutory, and common law rights against the Company, Mr. Baker, and anyone acting in unlawful concert with him. In addition, understand that should our clients remain shareholders of the Company long-term, they will enforce their rights to obtain their fair and appropriate share in connection with any liquidity event, including any sale of or public offering by the Company, by obtaining at the appropriate time all legal and, if necessary, equitable relief to which they are entitled.

Please feel free to contact me to discuss these issues further.

Very truly yours,

William L. Prickett

Enclosures

cc:  Barry D. Sears, Ph.D.
     Douglas Sears
     Christopher Baker

991860-4