## SEVENTH DEFENSE

The plaintiff's trademark-related claims are barred by the doctrine of acquiescence.

## EIGHTH DEFENSE

The plaintiff's trademark related claims are barred by their misuse of their claimed marks.

## NINTH DEFENSE

The plaintiff's claims for false advertising, commercial defamation, and unfair and deceptive practices and the like, are barred by the First Amendment of the U.S. Constitution and Articles 16, 19, and 21 of Part One of the Massachusetts Constitution.

## TENTH DEFENSE

The Court lacks subject matter jurisdictional over Count VI of the Complaint in that the claim is premature, seeks an improper advisory opinion, and is not justiciable.

## ELEVENTH DEFENSE

Count VI of the Complaint is barred, in whole or in part, because the United States Patent & Trademark Office has exclusive or primary jurisdiction over the consideration of applications for registration of trademarks.

## TWELFTH DEFENSE

Count IX of the Complaint is barred, in whole or in part, because it fails to allege special damages.

## THIRTEENTH DEFENSE

Counts X and XII of the Complaint is barred by the plaintiff's own material breaches of the 2001 Agreement, as described in greater detail in the Counterclaims.

## FOURTEENTH DEFENSE

Count XV of the Complaint is barred, in whole or in part, because the plaintiff is not a consumer within the meaning of G. L. c. 93A, § 9.

## FIFTEENTH DEFENSE

Count XV of the Complaint is barred, in whole or in part, because the plaintiff failed to provide the demand letter required by G.L. c. 93A, § 9.

## SIXTEENTH DEFENSE

The plaintiff has failed to mitigate its damages, if any.

## COUNTERCLAIMS AND THIRD PARTY COMPLAINT

Defendants and plaintiffs-in-counterclaim Dr. Barry D. Sears ("Dr. Sears") and Zone Labs, Inc. ("Zone Labs") herewith allege the following claims against plaintiff and defendant-in-counterclaim ZonePerfect Nutrition Company ("ZonePerfect").

## PARTIES

1. Dr. Sears is a well-known biochemist who has published ten books on improving health and wellness through the medicinal use of food to control hormonal responses. His publications include <u>The Zone</u>, <u>Mastering the Zone</u>, and <u>The Omega Rx Zone</u>. His business address is c/o Zone Labs, 222 Rosewood Drive, Suite 500, Danvers, Massachusetts 01923.

2. Zone Labs is a Massachusetts corporation which maintains its principal place of business at 222 Rosewood Drive, Suite 500, Danvers, Massachusetts 01923. Zone Labs markets, among other products, Dr. Barry Sears Omega Rx® Fish Oil and Omega Zone™ nutrition bars.

3. ZonePerfect is, upon information and belief, a corporation formed under the laws of Delaware with its principal place of business at 100 Cummings Center, Suite 335, North Beverly, Massachusetts 01915. ZonePerfect markets and distributes nutritional products, including nutrition bars, shakes, and prepared meals, many of which falsely claim to follow the principles of the Zone diet (control of blood sugar and insulin levels). As described below, ZonePerfect has persistently used Dr. Sears's name and likeness and has appropriated copyrighted and trademarked material in a concerted effort to confuse the public into believing that its products are associated with Dr. Sears (which they are not) and follow the principles of the Zone diet (which many do not).

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331, 1338 and 1367.

5. Venue is proper in this district under 28 U.S.C. § 1391.

## FACTS

6. Dr. Sears holds a Ph.D. degree in biochemistry from Indiana University. He has worked as a researcher at the University of Virginia School of Medicine, the Boston University School of Medicine, and the Massachusetts Institute of Technology.

7. After receiving his Ph.D. degree, Dr. Sears focused his research on the structure of phospholipids, fat derivatives that are one of the major constituents of cell membranes. In the early 1980's, Dr. Sears's research began to focus on how little-known hormones called eicosanoids could cause or influence chronic disease states, including heart disease, cancer, and diabetes. Eicosanoids are generated by body tissue in response

to stimuli. They are formed from highly unsaturated fatty acids that can be acquired only by consuming them in foods or supplements.

8. In particular, Dr. Sears began to study methods of controlling the production of eicosanoids at the cellular level by controlling the production of insulin. His work and the work of others (including studies conducted at the Harvard Medical School) confirmed that appropriate levels of Omega-3 (in particular, eicosapentaenoic acid, or "EPA") and Omega-6 (gamma linolenic acid, or "GLA") essential fatty acids could aid in the treatment of type II diabetes and heart disease as well as significantly increase performance in elite athletes.

9. While working with the Stanford University Swim Team in the early 1990's, Dr. Sears found that a diet with a ratio of protein to carbohydrate between 0.6 and 1.0 could optimize athletic performance in combination with appropriate use of EPA and GLA. In particular, Dr. Sears and Zone Labs established that such a regime could control insulin and blood sugar levels, thereby achieving a state of hormonal balance that Dr. Sears would later call "the Zone." Also at that time, Dr. Sears created the first nutrition bar based on his insulin control theories. As a result, in part, of Dr. Sears's work, the Men's and Women's Stanford Swim Teams dominated collegiate swimming in the early 1990's, and Stanford swimmers won seven gold medals in the 1992 Barcelona Olympics. Dr. Sears and Zone Labs' path-breaking work and its results were reflected in favorable articles in sports and fitness magazines, but remained largely unknown to the general public.

10. In 1995, Dr. Sears published <u>The Zone</u>. The book, which represented the summation of his life's work to that point, was ignored by most media outlets and sank to

the bottom of the trade lists. As a result of Dr. Sears's own efforts to publicize the book, however, it slowly developed a cadre of devoted followers. By April 1996, word-of-mouth advertising lifted The Zone to #1 on the New York Times Best Sellers List. Dr. Sears thereafter published numerous other books on Zone principles. His United States registrations include The Zone (1995, Reg. No. TX 4-233-086), Mastering the Zone (1997, Reg. No. TX 4-515-064), Zone Food Blocks (1998, Reg. No. TX 4-838-978), The Anti-Aging Zone (1999, Reg. No. TX 4-886-222), The Soy Zone (2000, Reg. No. TX 5-216-137), The Top 100 Zone Foods (2001, Reg. No. TX 5-269-184), and The Omega Rx Zone (2002, Reg. No. TX 5-586-780). Dr. Sears's books have been translated into 22 languages and have sold 4 million copies in the United States alone.

11. Since The Zone in 1995, all of Dr. Sears's books have had the term "Zone" in the title, and they have typically featured a distinctive cover design for the "Zone" element in the title. In that design, "Zone" appears in block letters. The letter "o" in "Zone" overlaps the capital "Z" and appears in a contrasting color to the rest of the word.

**The Founding of Eicotech Corporation**

12. Sometime in the spring of 1996, Dr. Sears met Christopher Baker, a principal in C.P. Baker & Company. In August, 1996, they formed Eicotech Corporation, which would later change its name to ZonePerfect after Dr. Sears was removed from the Board of Directors in 1999. As of 1996, The Zone was still a best seller, and an 800 number included in it for readers who wanted further information continued to generate telephone calls.

13. In the fall of 1996, Eicotech began selling a nutrition bar that Dr. Sears had developed, largely to callers to the 800 number and to the ever-increasing coterie of Zone enthusiasts who responded to Dr. Sears's teachings. At approximately the same time, Dr. Sears, at Mr. Baker's behest, signed the Stock Purchase and Holders Agreement. That Agreement was drafted by attorneys at what was then Dechert, Price & Rhoads, a law firm in which Mr. Baker's wife was a partner.

**Dr. Sears's Departure from Eicotech**

14. At the time the Stock Purchase and Holders Agreement was signed, Dr. Sears, his brother Douglas Sears ("Doug Sears") and a corporation that Dr. Sears and Doug Sears had previously formed, Surfactant Technologies, Inc., owned a majority of Eicotech's stock. In the early years of Eicotech, Dr. Sears was also for all practical purposes in charge of the company's daily operations except for finance. Eicotech's products, including the nutrition bars that Dr. Sears and Zone Labs had developed, were marketed under the Eicotech brand to medical professionals and the Eicozone brand to the general public. Dr. Sears's association with the product was of critical importance to its acceptance among consumers. Indeed, the presence of literally millions of Zone books written by Dr. Barry Sears in homes and bookstores across the country was the company's only marketing vehicle at the time.

15. In early 1998, Dr. Sears and Doug Sears began negotiations to leave Eicotech, which sought to sell its products to the mass market. Dr. Sears and Doug Sears informed Mr. Baker that they intended to focus on direct sales to elite athletes and health care professionals as they had previously done. Mr. Baker agreed and through 1998 the

35

parties worked amiably on the terms of Dr. Sears's and Doug Sears's separation from Eicotech, including a buy-out of the Sears' Eicotech stock.

16. At approximately the time that Dr. Sears made known his intention to leave Eicotech, the company began to develop what it would later term the 'slab' bar. The bar was brought to Eicotech primarily through the efforts of a consultant, David Thibodeau. At the time the product was being formulated, Dr. Sears had left the employ of Eicotech and was being used as a consultant. In February 1999, Dr. Sears, as a consultant, was only shown a nutritional breakdown of the proposed bars, but no ingredient lists.

17. As Dr. Sears discovered in early 1999 when he was at last provided with ingredient lists, the 'slab' bars would have a direct negative effect on blood sugar levels which would be contrary to Zone principles, because of the use of corn syrup or other high-glycemic index sweetening agents to make soy protein nuggets palatable. These same sweetening agents increase the glycemic response to the product such that the bars create an insulin 'spike' in the consumer – precisely the _opposite_ of the controlled insulin production which the Zone diet intends to create. At the same time, ZonePerfect reduced the content of long-chain Omega 3 fatty acids, from approximately 10 mg. to 3 mg. per bar.

18. After Dr. Sears and Zone Labs became aware of the composition of the 'slab' bars, he informed Mr. Baker that the bars were completely unacceptable and demanded that they either be reformulated or removed from the market. From that point forward, negotiations on the terms of Dr. Sears's and Doug Sears's separation from ZonePerfect became adversarial. Mr. Baker in December 1999 ordered Dr. Sears not to

visit the company's headquarters, even though he, his brother, and the corporation they owned, Surfactant, continued to be the company's largest shareholders.

19.     There followed a protracted period of negotiations between ZonePerfect and Dr. Sears regarding, among other things, repurchase of Dr. Sears's stock, and the parties' respective rights in intellectual property. These negotiations continued on literally for years. In time, Eicotech phased out the bars that Dr. Sears had developed to focus exclusively on the slab bars. Nevertheless, Eicotech continued prominently to feature the name "Dr. Barry Sears" on its packaging despite the fact that Eicotech and Mr. Baker were well aware that Dr. Sears considered the slab bars to be the nutritional equivalent of candy bars. Indeed, Dr. Sears believed (and expressed to ZonePerfect his belief) that the nutrition bars were in some respects worse than candy bars, since Type II diabetics who ate slab bars would experience an unhealthy and possibly dangerous impact on their blood sugar levels while believing that they were consuming a healthy, Zone-favorable product.

20.     In June 2000, Eicotech changed its name to ZonePerfect Nutrition Company. The extended negotiations between Eicotech/ZonePerfect and Dr. Sears at last culminated in an Agreement dated as of October 17, 2001 (the "2001 Agreement") between ZonePerfect, Dr. Sears, and others. The Agreement did not contain a restrictive covenant forbidding Dr. Sears from creating new products for other companies or from endorsing products for other companies, although ZonePerfect at numerous points in the negotiations attempted to obtain one. The 2001 Agreement also did not contain a non-disparagement clause forbidding Dr. Sears from criticizing ZonePerfect or its goods, although ZonePerfect well knew Dr. Sears's opinion of its principal product. Because the

parties had been unable to agree on who owned various trademarks and other intellectual property, the 2001 Agreement was largely silent on pending and contemplated trademark or other intellectual property ownership based on the parties' shared understanding that the United States Patent & Trademark Office ("PTO") would ultimately clarify the parties' respective rights. The 2001 Agreement however, at Dr. Sears's insistence, made clear that all rights in Dr. Sears's books, including design elements, belonged solely to him.

21. Among the requirements of the 2001 Agreement was that ZonePerfect would cease to have any rights of publicity in Dr. Sears's name or likeness after July 1, 2001 (plus three months for the company to dispose of inventory). Nevertheless, ZonePerfect has then and since engaged in a calculated effort to confuse consumers into believing that its products are Zone compliant and endorsed by Dr. Sears. As documented in the correspondence attached as Exhibits A, B, and C, ZonePerfect continued to sell nutrition bars with "Barry Sears, Ph.D." prominently displayed on the packaging long after its right to do so ceased, and apparently provided packaging with "Barry Sears, Ph.D." to its affiliate or licensee, ZonePerfect Canada, as recently as 2002. Its website claims, falsely, to be the "Official Site of the Zone Diet." Dr. Sears did not authorize those statements of endorsement or association, and his attorneys complained about them.

22. Equally disturbing, ZonePerfect began running short articles on its website purportedly authored by Dr. Robert Wayne Johnston, who apparently has no medical training and whose Ph.D is in "Human Sciences." As documented in the correspondence attached hereto as Exhibits D and E, several of Dr. Johnston's articles boldly plagiarized

large segments of Dr. Sears's books. The information presented on ZonePerfect's website under Dr. Johnston's by-line goes far beyond fair use, and is intended to suggest an association and affiliation which does not exist between Dr. Sears and ZonePerfect.

## COUNT I
(Lanham Act, § 43(a)(1))

23.  Dr. Sears and Zone Labs repeat the allegations in each of the above paragraphs as if fully set forth here.

24.  Dr. Sears and Zone Labs have engaged and continue to engage in interstate activities using trademarks and other protected intellectual property associated with the Zone Diet that Dr. Sears himself first formulated in his copyrighted publications. Dr. Sears, as the owner of those marks, and Zone Labs, as the licensee of those marks, have built and maintained the reputation of those marks.

25.  Among other things, Dr. Sears owns the following registered trademarks: Zone®, Reg. No. 2,689,749, for a series of books in the field of diet and nutrition, registered February 25, 2003; and Zone Skin Care®, Reg. No. 2,623,974, for cosmetic products, registered on September 24, 2002.

26.  Furthermore, Dr. Sears has pending applications for trademark registrations before the PTO. These applications include but are not limited to the following:

   A.  "DR. SEARS ZONE DIET"™ for use in connection with food products, Trademark Registration Application No. 76/363,075, filed on or about January 25, 2003;

   B.  "ZONE LABS"™ for use in connection with food products, Trademark Registration Application No. 78/301,669, filed on or about September 17, 2003;

C. "ZONE LABS"™ for use in connection with food products, Trademark Registration Application No. 78/301,931, filed on or about September 18, 2003;

D. "DR. SEARS ZONE APPROVED"™ for use in connection with food products, Trademark Registration Application No. 78/302,038, filed on or about September 18, 2003;

E. "DR. SEARS ZONE LABS"™ for use in connection with food products, including nutrition bars, Trademark Registration Application No. 78/301,935, filed on or about September 18, 2003;

F. "OMEGA RX ZONE"™ for use in connection with printed matter and educational material, Trademark Registration Application No. 76/349,493, filed on or about December 17, 2001;

G. "OMEGA ZONE"™ for use in connection with pharmaceuticals and printed material, Trademark Registration Application No. 76/333,054, filed on or about December 17, 2001;

H. "DR. SEARS ZONE (Stylized)"™ for use in connection with food products, Trademark Registration Application No. 76/553,546, filed on or about October 3, 2003;

I. "ZONE CUISINE"™ for use in connection with services providing food and drink, Trademark Registration Application No. 78/194,321, filed on or about December 13, 2002; for use in connection with food products, Trademark Registration Application No. 78/376,370, filed on or about March 1, 2004; and for use in connection with the storage and transportation of goods, Trademark Registration Application No. 78/383,282, filed on or about March 12, 2004;

J. "ZONE KITCHEN"™ for use in connection with scientific and technological services and research and design relating thereto, Trademark Registration Application No. 76/333,635, filed on or about November 1, 2001;

K. "DR. SEARS ZONE DIET"™ for use in connection with retail/catalog sales, restaurants, and internet information, Trademark Registration Application No. 76/363,318, filed on or about January 25, 2002;

L. "ZONE CENTER"™ for use in connection with workshops/counseling, Trademark Registration Application No. 78/249,730, filed on or about May 14, 2003;

    M.    "ZONE CAFÉ"™ for use in connection with catering and restaurants, Trademark Registration Application No. 78/251,008, filed on or about May 16, 2003;

    N.    "ZONERX"™ for use in connection with a meal replacement drink, Trademark Registration Application No. 78/301,657, filed on or about September 17, 2003;

    O.    "ZONE ICE CREAM"™ for use in connection with ice cream products, Trademark Registration Application No. 78/301,941, filed on or about September 18, 2003;

    P.    "DR. SEARS ZONE LABS"™ for use in connection with retail/catalog sales, Trademark Registration Application No. 78/301,937, filed on or about September 18, 2003;

    Q.    "DR. SEARS ZONE (Stylized)"™ for use in connection with workshops, catering, restaurants, and online information, Trademark Registration Application No. 76/553,547, filed on or about October 3, 2003.

27.    "OMEGAZONE"™, ZONE SKIN CARE™, and the mark ZONE™ for nutrition books are marks which Dr. Sears and Zone Labs have expended substantial sums of money to build and maintain. Dr. Sears and Zone Labs have provided and sold goods and services in interstate commerce using the marks. The marks are known in the pertinent markets as identifying and distinguishing the goods and services of Zone Labs and Dr. Sears. Consequently, those marks are well recognized, distinctive and famous within the relevant markets.

28.    Through these activities, ZonePerfect has in interstate commerce utilized words, terms, and names, as well as false designations of origin, and false and misleading descriptions of fact which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Dr. Sears and Zone Labs with ZonePerfect, as to the origin, sponsorship or approval by Dr. Sears of products and services.

29. Such conduct is in violation of § 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125, and such violations are ongoing.

30. Through such conduct, ZonePerfect has caused monetary harm to Dr. Sears and Zone Labs as well as irreparable harm to the trademarks referenced above and to Dr. Sears's and Zone Labs' good will and reputation.

## COUNT II
(Lanham Act, § 43(a)(2))

31. Dr. Sears and Zone Labs repeat the allegations in each of the above paragraphs as if fully set forth here.

32. ZonePerfect has engaged in a sustained campaign of attempting to convince consumers that (i) Dr. Sears remains associated with ZonePerfect Nutrition Company; (ii) the products it sells, and in particular its nutrition bars, are endorsed by Dr. Sears; and (iii) its nutrition bars comply with Zone principles of blood sugar control and eicosanoid control as formulated by Dr. Sears in his various books. These representations are categorically false. ZonePerfect's false and misleading representations also include but are not limited to the representations on its website described above as well as its continuing to sell nutrition bars prominently labeled as "Dr. Barry Sears ZonePerfect" product after Dr. Sears ceased to be associated with the company. ZonePerfect has also conspicuously failed to disclaim any ongoing connection to Dr. Sears on its website, which falsely trumpets itself as "the Official Website of the Zone Diet." ZonePerfect has also attempted to associate itself with Dr. Sears by such deceptive actions as prominently displaying a copy of one of Dr. Sears's books surrounded by ZonePerfect products, thereby falsely implying Dr. Sears's endorsement of ZonePerfect's goods.

33. Thus, ZonePerfect has, in commercial advertising or promotion, misrepresented the nature, characteristics, and/or qualities of its goods. ZonePerfect's false statements have caused actual deception and are likely to continue to deceive a substantial portion of their intended audience. Furthermore, ZonePerfect's statements contain material misrepresentations which are likely to influence purchasing decisions.

34. ZonePerfect's use of false statements in promotional materials as described above are in violation of the Lanham Act, 15 U.S.C. § 1125 (a)(2).

35. These false and misleading statements have created a likelihood of injury to Dr. Sears and Zone Labs, including but not limited to loss of potential sales, loss of good will, damage to Dr. Sears's and Zone Labs' reputation in the scientific and popular community, and other substantial and irreparable harm to Dr. Sears and Zone Labs.

## COUNT III
(Copyright Infringement, 17 U.S.C. § 501 et seq.)

36. Dr. Sears repeats the allegations in each of the above paragraphs as if fully set forth here.

37. As set forth above and as explained in greater detail in the correspondence attached hereto as Exs. D and E, ZonePerfect has published on its website material which copies extended passages from Dr. Sears's books.

38. Dr. Sears has a valid and subsisting copyright in the materials which ZonePerfect copied.

39. ZonePerfect's infringement was willful and/or knowing.

40. Through such conduct, ZonePerfect has caused monetary harm to Dr. Sears as well as irreparable harm to Dr. Sears's good will and reputation.

## COUNT IV
### (Breach of Contract)

41.   Dr. Sears repeats the allegations in each of the above paragraphs as if fully set forth here.

42.   Under the 2001 Agreement, ZonePerfect agreed, *inter alia*, that Dr. Sears would have sole and exclusive rights to his books and that ZonePerfect would cease to use Dr. Sears's name, likeness, image, voice, signature, or picture (the "Publicity Rights") in connection with the advertising, marketing, packaging, sale and distribution of ZonePerfect's products after July 1, 2001, plus an additional three months for distribution of accumulated inventory.

43.   By the actions set forth above, ZonePerfect has breached the 2001 Agreement including the covenant of good faith and fair dealing implied in that contract, and Dr. Sears was harmed thereby.

## COUNT V
### (Violation of Mass. Gen. L. ch. 110, § 4)

44.   Dr. Sears repeats the allegations in each of the above paragraphs as if fully set forth here.

45.   After Dr. Sears ceased to be affiliated with ZonePerfect, that company nevertheless assumed or continued to use in its business Dr. Sears's name without his consent or the consent of his legal representatives in writing. Through such conduct, ZonePerfect has caused monetary harm to Dr. Sears as well as irreparable harm to the trademarks referenced above, and to Dr. Sears's good will and reputation. Under ch. 110, § 4, Dr. Sears is entitled to damages and to an injunction restraining ZonePerfect from any further use of his name.

## COUNT VI
(Violation of Common Law Trademark Rights)

46. Dr. Sears and Zone Labs repeat the allegations in each of the above paragraphs as if fully set forth here.

47. Dr. Sears and Zone Labs have made significant and ongoing efforts to use, appropriate, and protect the marks described at Paragraph 27 above.

48. ZonePerfect has adopted a knowing strategy of using misleadingly descriptive marks in connection with its products. In particular, ZonePerfect has used the term "Zone," which is and since 1995 firmly been associated with Dr. Sears and a particular set of dietary principles, to mislead consumers into believing that the products are associated with Dr. Sears and that the products adhere to the dietary principles he formulated. The use of such marks is likely to cause confusion or mistake or to deceive.

49. ZonePerfect's conduct thus violates Dr. Sears's and Zone Labs' common law trademark rights and proprietary interests in the marks specified above. Such conduct has caused substantial and irreparable damage to Dr. Sears and Zone Labs, and that damage is ongoing.

## COUNT VII
(Trademark Cancellation)

50. Dr. Sears and Zone Labs repeat the allegations in each of the above paragraphs as if fully set forth here.

51. ZonePerfect claims to own federal Trademark Registrations Nos. 2,645,665 for the ZonePerfect stylized mark and No. 2,294,807 for the ZonePerfect word mark.

52. Those marks, however, are descriptively misleading insofar as they imply that all products to which they are affixed comply with Zone principles articulated by Dr. Sears in his copyrighted works and so misrepresent and misdescribe those products. As such, the foregoing registrations should be cancelled pursuant to 15 U.S.C. § 1064.

## COUNT VIII
(Mass. Gen. L. ch. 93A)

53. Dr. Sears and Zone Labs repeat the allegations in each of the above paragraphs as if fully set forth here.

54. Through the acts described above, ZonePerfect has engaged in unfair or deceptive acts or practices within the meaning of Mass. Gen. L. ch. 93A, § 2.

55. These acts occurred primarily and substantially in the Commonwealth of Massachusetts, and they were knowing or willful. Dr. Sears and Zone Labs were harmed thereby.

WHERFORE, Dr. Sears and Zone Labs respectfully request that this Honorable Court:

   A.   Enter judgment for Dr. Sears and Zone Labs on Counts I, II, VI, and VII, and for Dr. Sears on Counts III, IV, and V;

   B.   Award damages to Dr. Sears and Zone Labs on each of the above Counts in an amount to be proved at trial;

   C.   Permanently restrain and enjoin ZonePerfect and its agents, servants, employees, attorneys, successors, assigns and all persons in active concert or participation with them from

  (i) using Dr. Sears's name or likeness in a manner to suggest association, affiliation, or endorsement of ZonePerfect's products;

  (ii) using any words, names, styles, titles, logos or marks which create a likelihood of injury or cause injury to the business reputation of Dr. Sears, Zone Labs or the products they sell and/or the goodwill associated therewith including but not limited to any references to its web site as the "official" site of the Zone diet or otherwise representing itself as an "official" source of Zone-compliant products or information;

  (iii) falsely claiming that products not in compliance with Zone principles as articulated in Dr. Sears's books are "Zone" products, including restraining the use of the term "Zone" as part of any mark, style, title, name, logo or identifier; and,

  (iv) copying from Dr. Sears's publications on ZonePerfect's website or elsewhere;

D. Direct ZonePerfect to send and make public, in a fashion commensurate with the form of distribution used for their prior advertising and promotional activities, corrective notices sufficient to reach and every recipient of the false and misleading information, informing such persons that Dr. Sears is neither affiliated with nor endorses the products of ZonePerfect, and that this corrective notice be first sent to and approved by Dr. Sears an and Zone Labs;

E.     Award, on Count III, full statutory damages, costs, and attorneys' fees pursuant to 17 U.S.C. §§ 504 and 505.

F.     Award, on Count IV, damages and costs arising from ZonePerfect's violation of the express and implied terms of the 2001 Agreement and Order specific performance of the 2001 Agreement by enjoining ZonePerfect from any use of Dr. Sears's name, likeness, image, voice, signature, or picture in connection with the advertising, marketing, packaging, sale or distribution of ZonePerfect's products;

G.     Award Dr. Sears and Zone Labs their attorneys' fees and costs under Mass. Gen. L. ch. 93A or, alternatively or conjunctively, determine that the willful and deliberate nature of the false advertising and unfair competition justifies an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1117;

H.     Determine that ZonePerfect's unfair and deceptive acts or practices were knowing or willful, and award double or treble the foregoing damages, pursuant to Mass. Gen. L. ch. 93A;

I.     Conduct an accounting of all benefits obtained by ZonePerfect from its false advertising, unfair competition, copyright infringement, unfair and deceptive acts and practices, or violation of Mass. Gen. L. cg. 110 § 4 and order, alternatively or conjunctively with the relief requested above, disgorgement of any gains realized by ZonePerfect;

J.     Award Dr. Sears and Zone Labs pre-judgment interest for all damages for which ZonePerfect is found liable;

K.  Grant Dr. Sears and Zone Labs whatever other or additional relief as this Court deems just and equitable under the circumstances.

## JURY DEMAND

Dr. Sears and Zone Labs demand a trial by jury on all claims so triable.

DR. BARRY D. SEARS
and ZONE LABS, INC.

By their attorneys,

/s Lisa G. Arrowood
Lisa G. Arrowood (BBO#022330)
Ian Crawford (BBO#544475)
Edward Foye (BBO#562375)
David H. Rich (BBO#634275)
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 720-2626

DATED: June 2, 2004

## CERTIFICATE OF SERVICE

I, Lisa G. Arrowood, hereby certify that a true and accurate copy of the foregoing document was served on all counsel of record via electronic mail and regular mail this 2nd day of June, 2004.

/s Lisa G. Arrowood
Lisa G. Arrowood