**<u>TAB 6</u>**

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

DAVID H. RICH
Email: drich@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

June 2, 2004

**VIA FACSIMILE AND
FIRST CLASS MAIL**

Joshua M. Dalton, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110

RE:    ZonePerfect Nutrition Company v. Hershey Foods Corporation, et al.
       United States District Court Civil Action No. 04-10760 REK (D. Mass.)

Dear Josh:

This letter will confirm our recent phone conversations and re-emphasize the concerns and issues raised by Lisa Arrowood, Ed Foye, Tom Smart, Richard De Sevo and I this morning.

First, two weeks ago I wrote you a letter expressing my concern regarding ZonePerfect's Automatic Disclosures. My concerns centered around your unwillingness to identify, as required by the rules, witnesses likely to have discoverable information supporting ZonePerfect's claims or defenses. Within days, you and I spoke via conference call with Lisa Arrowood and Carl Solomont. You indicated that a supplemental disclosure would be provided "within a day or two" and that a complete disclosure hadn't been provided because you were unaware of Dr. Sears' claims in this case and therefore could not disclose defensive witnesses for unknown claims. When I pointed out that you had been made aware of Dr. Sears' claims as early as our initial opposition to ZonePerfect's motion for an early trial date, you had no response. Based upon your representation that supplemental automatic disclosures would be provided "within a day or two," we did not file a motion to compel at that time.

In the days that followed, emails were exchanged between our offices where you repeated your promise to provide the revised disclosures within a day or two. When you called me this past Friday to request an extension of time to respond the counterclaim (an extension which we granted you), you expressed surprise that we had not received the automatic disclosure yet and indicated that you would send it to me immediately. You also indicated that "it was not a big deal" because you had only added "a name or two" to the disclosure. Now, five days later we still have not received your revised disclosure. Even your email from this morning states, "we *will* amend our initial disclosure."

Joshua Dalton, Esquire
June 2, 2004
Page 2

Now, we have learned that you intend to identify as many as nine (9) new witnesses who have discoverable information, who may submit affidavits to the Court, and who therefore need to be deposed. Additionally, you have refused to agree that the affidavits you intend to offer from these non-disclosed individuals would be limited to matters addressed in the yet to be served revised disclosure. Your actions in this regard are totally unacceptable and flaunt the letter and the spirit of Judge Keeton's discovery order and have also prejudiced Dr. Sears' ability to prepare for the preliminary injunction hearing.

In addition, you have refused to provide available dates for your expert witnesses other than the last week in June. This too is completely unacceptable and has prejudiced Dr. Sears. It is not fair for you to request an expedited schedule such as this, which contemplates staggered expert disclosures, and not agree to produce your expert witness for deposition until the last week of discovery. At the same time, you have asked us for dates to schedule our experts. It is not our fault that you waited to retain an expert until after you filed this case, nor is it our fault that you are not available to work on this case or participate in discovery during the week of June 14th. Since you did not even hire experts until after Judge Keeton's scheduling order came down, you could and should have conditioned your retention on their availability for deposition. We intend to ask the Court for an order compelling the deposition of Mr. Simonson for June 16th at 1:00 p.m. in Boston and Ms. MacDonald for June 17th at 1:00 p.m. in Boston.

As we also discussed, ZonePerfect's designation of documents as "highly confidential" and "confidential" is completely unacceptable. You agreed that the designation was improper and will provide us a list "in the next day or two" of those documents, by category, which you truly contend are "highly confidential." Your initial designation and delay in identifying those materials which are truly "highly confidential" has prejudiced our ability to work with our clients to prepare for deposition and the injunction hearing. You agreed that materials sent to or from Dr. Sears, as well as materials copied to Dr. Sears can be shown to Dr. Sears regardless of the "highly confidential" designation. Likewise you agreed that materials publicly available such as newspaper articles, materials filed in Court, ZonePerfect bar labels and other marketing materials, among other items designated as "highly confidential" need not be treated as such. You would not agree during our phone call that corporate documents created while Dr. Sears worked with ZonePerfect, as well as documents which reference Dr. Sears' name (not were not provided to him), can be shown to Dr. Sears. This is unacceptable and we intend to raise this issue with the judge.

We addressed the issue of ZonePerfect's outstanding document production. You confirmed during our call that no ZonePerfect emails have been produced to date, despite the fact that they should have been produced almost a week ago. You were unwilling to commit to a date by which these materials would be produced other than to say that you had no idea how many emails existed and would keep us posted. You also confirmed that Dechert's hard copy documents, as well as emails, had not been produced to date but that you expected to provide those documents tomorrow or Friday. I note that it was your office that incorporated the term "Professional Advisor" into your document request and insisted that Dr. Sears and Hershey produce materials from "Professional Advisors" at the same time as the underlying document production. My office went through the painstaking (and costly) process of producing

Joshua Dalton, Esquire
June 2, 2004
Page 3

documents from Testa, Hurwitz and Patterson, Bellnap, Webb & Tyler, Dr. Sears' professional advisors, not to mention the hundreds of emails produced from Dr. Sears own files in a timely fashion and as agreed by the Scheduling Order. We accept your representations that Dechert has largely been responsible for the delay in producing their own files, but the fact also remains that as of approximately ten (10) days ago when Lisa Arrowood spoke to Mel Schwartz of Dechert (on a call you participated in), Dechert had not even seen Dr. Sears' document request. Furthermore, whatever the reason for ZonePerfect's failure to meet the deadlines in Judge Keeton's discovery order, the fact is that the failure to make a timely and complete document production has prejudiced Dr. Sears. We intend to raise this issue with the judge as well.

Finally during our call I addressed the issue of ZonePerfect's historical website information. You indicated, contrary to what you told me last week, that ZonePerfect does not have these materials and that we will need to request the information directly from C.P. Baker Co. or Mr. Baker. I relied on your representation that the web information did exist and would be produced within ZonePerfect's document production last week.

It is not my intention to prejudice the strong working relationship that we have developed, and I know that everyone on the case applauds your efforts to keep open the lines of communication. Nevertheless, the fact remains that ZonePerfect made representation to the Court at the time it filed its Complaint that it was ready to try this case by July 15, 2004. It now seems unassailably clear that it was not prepared to do any such thing. I regret having to write a letter of this sort but given the current state of discovery and the severe prejudice to my clients, I feel that I have no choice.

Very truly yours,

David H. Rich

Cc:    Lisa G. Arrowood, Esquire
       Edward Foye, Esquire
       Thomas Smart, Esquire (via fax)
       Richard DeSevo (via fax)
       Seni M. Adio, Esquire (via fax)

**<u>TAB 7</u>**

## Rich, David H.

| | |
|---|---|
| **From:** | Arrowood, Lisa |
| **Sent:** | Wednesday, June 02, 2004 8:39 AM |
| **To:** | Rich, David H.; Crawford, Ian; Foye, Edward F. |
| **Subject:** | FW: zoneperfect |

-----Original Message-----
**From:** Dalton, Joshua M. [mailto:josh.dalton@bingham.com]
**Sent:** Tuesday, June 01, 2004 8:30 PM
**To:** Thomas A. Smart Esq. (E-mail); Arrowood, Lisa
**Cc:** Goldberg, Daniel L.; Solomont, Charles L.; Mitchell, Matthew L.
**Subject:** zoneperfect

Tom and Lisa:

Update on deposition schedules and initial disclosures:

1. Amanda Libby is available on June 24th or 25th, though if we do the 24th, we may need to start later in the day.

2. Dr. Simonson is unavailable until the week of June 28. However, as you know, expert depositions may be completed any time before July 9, so that should not pose a problem. He has agreed to the deposition occurring on the East Coast.

3. I received a voicemail from Dr. McDonald that she is unavailable the week of June 7th. She has asked that we do the deposition in Philly. The 14th of June came up, but I assume that is out since Tom will presumably want to defend Mr. Lenny. I have asked for additional dates after the 14th. Tom/Lisa, what dates will work for you for Dr. McDonald?

4. On the topic of expert depositions, and though you need not disclose your experts yet, we would appreciate if you could discuss with them now their availability on dates following their first expert report. Assuming one day per expert, we suggest nailing down dates now that work for the expert(s) and counsel. Please advise.

5. We will be amending our initial disclosures to add Ellen Morris, 6 Chestnut Street, Marblehead, MA 01945, an ex-employee of ZonePerfect. She may testify as to the facts surrounding Sears' split from Envion, and his involvement with Eicotec including development and endorsement of its products.

6. We will amend our initial disclosures to reflect that we may be seeking testimony from one or more of the following witnesses from Sweet Productions, 5100 New Horizon Blvd, Amityville, NY 11701: Paul Schacher, Ben Cohen, or Joe Pizzo. They are expected to testify about the development of ZonePerfect products.

7. We will amend our initial disclosures to reflect that we may be seeking testimony from one or more of the following witnesses from Shuster Labs, 85 John Road, Canton, MA 02021 (who in any event has already been listed on defendants' initial disclosures): Phil Katz, Paula Gately, or Ann Behen. They are also expected to testify about the development of ZonePerfect products.

8. We will amend our initial disclosures to reflect that we may be seeking testimony from Denise Kelly. We do not have a current telephone number or address. She is expected to testify about the development of ZonePerfect products.

I will be available at 8:30 am tomorrow as planned if you wish to discuss these matters further.

6/2/2004

-Josh

**Joshua M. Dalton**
**Bingham McCutchen LLP**
**150 Federal Street**
**Boston, MA 02110**
**ph: 617-951-8284**
**fx: 617-428-6305**

*The information in this transmittal (including any attachments) is privileged and confidential and is intended only for the recipient(s) listed above. If you are neither the intended recipient(s) nor a person responsible for the delivery of this transmittal to the intended recipient(s), you are hereby notified that any unauthorized distribution or copying of this transmittal is prohibited. If you have received this transmittal in error, please notify me immediately at (617) 951-8000.*

6/2/2004

**TAB 8**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZONEPERFECT NUTRITION COMPANY )<br><br>Plaintiff, )<br><br>v. )<br><br>HERSEY FOODS CORPORATION, )<br>HERSEY CHOCOLATE & )<br>CONFECTIONERY CORPORATION, and )<br>BARRY D. SEARS )<br><br>Defendant. ) | CIVIL ACTION<br>NO. 04-10760-REK |

## DR. BARRY SEARS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION
## FOR EXPEDITED CASE MANAGEMENT ORDER
## AND JULY, 2004 TRIAL DATE

On Saturday, April 17, 2004, Dr. Barry Sears ("Dr. Sears") was served with a two

hundred and thirty one (231) paragraph complaint in this matter containing fifteen (15)

counts and twenty-eight (28) exhibits. Although the complaint alleges irreparable harm,

the complaint is not accompanied by any motion for a preliminary injunction. Despite

this fact, as well as the fact that the plaintiff has been aware of the allegations raised in

their complaint for months, ZonePerfect Nutrition Company ("ZonePerfect II")[1]

nonetheless seeks an expedited case management order and a trial on the merits on July

15, 2004, approximately two and a half months from today. The proposed scheduling

order and trial schedule seeks to turn on its head the Federal Rules of Civil Procedure and

---

[1]    To avoid confusion, Dr. Sears will refer to the entity owned in part by Christopher Baker as
"ZonePerfect I." Dr. Sears will identify the successor entity (and the plaintiff in this case) as "ZonePerfect
II."

abandon this Court's Local Rules.  The proposed scheduling order provides no timetable for the filing of summary judgment motions or <u>Daubert</u> motions, provides no real opportunity for Dr. Sears to move to dismiss any of the counts brought against him (let alone an opportunity for the Court to rule on any such motion), provides no reasonable opportunity for Dr. Sears to file counterclaims or join other parties and requires that experts be retained and reports disclosed in a little over a month's time, among several other unrealistic deadlines.  Additionally, the proposed trial date of July 15, 2004 will fall a week before the Democratic National Convention in Boston, making the expected two to three week jury trial even more unrealistic.

Dr. Sears is willing to entertain the concept of an expedited discovery schedule, so long as the plaintiff appropriately files a motion for a preliminary injunction, and early discovery is limited to issues related to a preliminary injunction hearing to be held on or about July 15, 2004.  Towards that end, Dr. Sears and co-defendant Hershey proposed such a schedule to plaintiff's counsel on Friday, April 23, 2004.  That schedule is attached hereto as <u>Exhibit A</u>.  This proposal will allow the Court to test the plaintiff's cries of irreparable harm on an expedited basis while at the same time allowing the parties to assert counterclaims, third party claims and conduct discovery on the majority of the claims asserted in this case in a reasonable and rational manner.

The schedule proposed by the plaintiff is unworkable for a number of reasons.  Among other things, in order to prepare this case properly for a full trial on their fifteen (15) count Complaint, multiple depositions will have to be taken given plaintiff's apparent plan to plumb "the intent of the parties" (Complaint, ¶ 60) in the signing of the October , 2001 Stock Repurchase Agreement.  This discovery may include the

depositions of attorneys who negotiated the Agreement between Dr. Sears and

ZonePerfect I. Voluminous files will have to be produced, not only including the files of

the attorneys who negotiated the Agreement, but also the files of those who conducted

due diligence for Abbott Laboratories ("Abbott Labs") prior to its purchase of

ZonePerfect I. In addition, given the nature of the allegations made by the plaintiff, what

ZonePerfect I's owners told Abbott Labs about Dr. Sears, his separation from the

company, Zone technology and the nutrition bar market generally may be of significance.

Depositions and files pertaining to these discussions will also have to be thoroughly

discovered prior to the jury trial on the merits. Out of state depositions may be necessary

given the fact that two of the entities involved in this case, Abbott Labs and Hershey

Foods Corporation, have no offices in Massachusetts. In addition, Dr. Sears intends to

file a counterclaim based upon ZonePerfect's misuse of Dr. Sears' name creating the

false impression that Dr. Sears is still in some way associated with and endorsing

ZonePerfect's products. Dr. Sears also expects to conduct discovery to ascertain whether

third party claims are appropriate. Given the substantial and significant discovery

required to prepare properly for a several week jury trial of a fifteen (15) count

Complaint, as well as counterclaims yet to be filed, the expedited discovery and trial

schedule proposed by the plaintiff should not be approved by this Court.

## BACKGROUND FACTS

ZonePerfect's complaint would lead one to believe that upon his separation from

ZonePerfect I in 2001, Dr. Sears signed an agreement giving up his right to use any

ZONE marks on any food products at any time. This, ZonePerfect II alleges, was

ZonePerfect I and Dr. Sears' "intent" (Complaint, ¶ 60) and that "Sears understood and

3

expressly agreed that he was without right to use (or approve anyone else to use) ZONE

marks in the sale or distribution of food products." (Complaint, ¶ 63).  Of course there is

no contractual provision which provides for such a thing, and in fact, Dr. Sears'

agreement with ZonePerfect I unambiguously states the exact opposite in declaring,

among other things, that ZonePerfect "shall have no rights in or to any inventions,

product formulations, developments, innovations, techniques, designs, processes,

procedures, improvements, work of authorship created or developed by [Dr. Sears after

December 31, 1998] including any intellectual property rights therein or thereto."  See

Exhibit B, ¶ 2(e) (Stock Repurchase Agreement).  In addition, the agreement also

unambiguously provides that "there shall be no restrictions, limitations or prohibitions on

the activities of [Dr. Sears] or [ZonePerfect] upon consummation of the Closing."  Id., ¶

8(a).

     Years earlier, in the spring of 1998, Dr. Sears had a falling out with ZonePerfect I

which evolved, at least in part, from Dr. Sears' concerns about some of the newer

products being brought to market.  Dr. Sears' employment was terminated effective

December 31, 1999.  See Exhibit B, ¶ 6(b).  Despite the allegations in the Complaint that

Dr. Sears left ZonePerfect I to pursue "scientific research and writing" (Complaint, ¶ 56),

in fact, both parties knew that Dr. Sears intended to separate from ZonePerfect to

eventually compete in the nutrition bar industry.

     Thereafter, Dr. Sears and ZonePerfect I engaged in a series of long and protracted

negotiations, all designed toward enabling Dr. Sears to sever all relationships with

ZonePerfect so that he might pursue other opportunities.  The October 17, 2001 Stock

Repurchase Agreement was the consummation of several years of negotiations,

discussions and agreements, all of which occurred between multiple lawyers and multiple parties. During those negotiations, ZonePerfect I demanded that the agreement include non-competition and non-disparagement clauses binding Dr. Sears. Dr. Sears refused and the provisions were not included in the final agreement.

Despite the fact that Dr. Sears has not worked with ZonePerfect for over five (5) years, ZonePerfect continues to utilize Dr. Sears' name in attempting to confuse the public into believing that Dr. Sears approves of and endorses the ZonePerfect product line. Attached hereto as <u>Exhibit C</u> is a copy of certain pages of ZonePerfect's website which, in addition to offering Dr. Sears' books for sale, calls itself "the official website of the Zone diet," a diet created by and inextricably connected with Dr. Barry Sears.

**ARGUMENT**

The plaintiff's proposed discovery schedule assumes that virtually no discovery will be required, in part, because, they apparently contend, this case relies upon a single contract executed by Dr. Sears in 2001. This case is about much more than a single document.

## I.    THE DISCOVERY WHICH WILL *ACTUALLY* BE REQUIRED PRIOR TO A TRIAL ON THE MERITS

As set forth above, the Stock Repurchase Agreement between Dr. Sears and ZonePerfect I was negotiated over several years by multiple law firms as well as the parties themselves. Despite the plaintiff's suggestion to the contrary, the Stock Repurchase Agreement does not restrict Dr. Sears from utilizing the ZONE mark. As a result, ZonePerfect II apparently plans to argue that such a restrictive limitation was "the parties' intent" (Complaint, ¶ 60) and that the agreement is ambiguous. Discovery concerning plaintiff's contention in this regard will be substantial. This will include

5

depositions of the principals involved in the negotiations, as well as lawyers from Testa,

Hurwitz & Thibeault, LLP, who represented Dr. Sears, and lawyers from the Philadelphia

office of Dechert, Price & Rhodes, as well as a lawyer from Hale and Dorr, who

represented ZonePerfect I. Each of these individuals will have to be deposed if "the

parties' intent" is at the heart of plaintiff's allegations, as it appears to be.

In addition, before a trial on the merits, discovery will be necessary on the due

diligence performed by Abbott Labs prior to its purchase of ZonePerfect I, as well as

those communications, both written and oral, made by ZonePerfect I to Abbott Labs, both

before, during and after the sale was consummated. This evidence is likely to reveal that

either ZonePerfect I's owners misled Abbott Labs about important facts relating to Dr.

Sears, his Stock Repurchase Agreement, the nutrition bar industry and Zone technology

or that Abbott Labs failed to adequately perform its due diligence in connection with the

purchase. Because Abbott Labs is a corporation located in Illinois, out of state

depositions and document productions are likely to be necessary.

These are but a few examples of the voluminous and plainly relevant discovery

needed to prepare this case properly for trial on this fifteen (15) count Complaint.

ZonePerfect's proposed schedule would unfairly and improperly prejudice the defendants

as it would be virtually impossible to conduct the above referenced discovery in less than

two months' time.

## II.  THE CASES CITED BY THE PLAINTIFF DO NOT SUPPORT A REQUEST FOR AN EXPEDITED TRIAL DATE

The cases cited by the plaintiff in support of their request for a trial on the merits

in approximately eighty (80) days do not support their extraordinary request. In Re

Websecure, Inc., 1997 U.S. Dist. LEXIS 19600 (D. Mass. 1997) (O'Toole, J.) for

example, granted expedited discovery only as to a narrow, limited issue which had direct bearing on whether injunctive relief was appropriate. No early trial date was set and the Court did not order all discovery to be completed within weeks. ZonePerfect contends that Lugo v. Alvarado, 819 F.2d 5, 7 (1st Cir. 1987) stands for the position that expedited proceedings are warranted if the plaintiff can demonstrate potential prejudice and irreparable harm. The cited case does not stand for this proposition. In fact, the case involved "extensive discovery" spanning seven (7) months and the appeal of a decision by the District Court not to stay discovery during the pendency of a motion for summary judgment. Id., at 6. The Court in Aaron v. Mattikow, 146 F. Supp 2d 263 (E.D.N.Y. 2001) ordered limited discovery on a discrete issue two years after the plaintiff had filed the complaint. Schonbek Worldwide Lighting, Inc. v. Am. Lighting Fixture Corp., 2002 U.S. Dist. LEXIS 4761, *2 (D. Mass. 2002) ordered an "expedited trial" (without explanation) one year after the case had been commenced.

ZonePerfect also cites a series of cases which purport to discuss irreparable harm in the context of trademark infringement cases. These cases have no bearing on whether the Court should order an expedited discovery schedule and an early trial date because each of these cases specifically involved a plaintiff moving for a preliminary injunction and did not involve any sort of request for an expedited discovery and/or full trial schedule. See Societe Des Produits Nestle, S.A. v. Casa Helventia, Inc., 982 F.2d 633 (1st Cir. 1992) (discussing "irreparable harm" in trademark case in the context of a preliminary injunction); Sears, Roebuck & Co. v. Sears Financial Network, Inc., 567 F. Supp. 857 (D.D.C. 1983) (another case cited by ZonePerfect involving the request for a preliminary injunction); The Keds Corp. v. Renee International Trading Corp., 888 F.2d

7

215 (1st Cir. 1989) (same); <u>Volkswagenwerk Aktiengesellshaft v. Wheller</u>, 814 F.2d 812
(1st Cir. 1987) (same).

      ZonePerfect fails to cite a case allowing for an expedited discovery schedule and
trial date in circumstances such as those present here because to grant such a request
would be virtually unprecedented.  If ZonePerfect believes that it is likely to succeed on
the merits of its claims and contends that the defendants' actions will cause irreparable
harm, then ZonePerfect should file a motion for a preliminary injunction.  Dr. Sears'
proposed schedule provides ZonePerfect with just that opportunity.  Quite simply,
unsubstantiated cries of irreparable injury are not unique to this case.  These allegations
are made in virtually every trademark case.  ZonePerfect's discovery and trial schedule
effectively requests that the Court adopt a new Local Rule for intellectual property cases
allowing for limited discovery and trial dates occurring within three (3) months of the
filing of a complaint.  There is simply no basis for the creation of a new local rule in this
regard.

**CONCLUSION**

      For the forgoing reasons, Dr. Sears respectfully requests that the Court deny
ZonePerfect's request for an expedited discovery and a trial date and enter the scheduling
order attached hereto as <u>Exhibit A</u>.

8

BARRY D. SEARS,

By his attorneys,

_____
Lisa G. Arrowood (BBO#022330)
Ian Crawford (BBO#544475)
David H. Rich (BBO #634275)
Todd & Weld LLP
28 State Street
Boston, MA  02109
(617) 720-2626

DATED:  April 23, 2004

9

**<u>TAB 9</u>**

Date: February 18, 1999

Dear Paul:

Here are the answers to your questions. I would keep these to yourself until an appropriate company response is formulated and approved by everyone.

1. Yes, but unfortunately it is rich in Omega-6 fatty acids.
2. Refined olive oil has no taste, nor does high-oleic sunflower oil that has a fatty acid composition similar to olive oil. Canola is a less desireable choice, but much better than sunflower oil.
3. Yes.
4. Unknown.
5. Guessing.
6. Corn syrup is used to hold the extra protein as it has better "glue" characteristics than high fructose corn syrup.
7. Probably.
8. The present configuration of the soy nuggets required it. An improved bar would not.
9. Cocoa butter is used for consistency and mouth feel. It is not one of my favorite fats hormonally speaking, but it is better than sunflower oil (see #1)
10. It is used for mouth feel only.
11. Yes.
12. Yes.
13. It is one-half fructose, one-half glucose.
14. Yes, but it gives crunch. I believe that better choices are available that give a crunch without using rice flour.
15. Probably, but not as much crunch. Soy nuts or soy chucks would have been better.
16. Yes.

I was only given the nutritional facts on these bars, not the ingredient listing. I am not happy with the ingredients used nor happy with the initial performance results of these bars. Needless to say, I am not "exceptionally proud of the scientific research and development that went in the patented All Natural ZonePerfect Nutrition Bar" since I was not consulted about the ingredients and now have to do a lot of spin control.

This being said, the only thing to tell people is that this is a first generation of the crunch bars, and that they provide some extra variety in addition to the original ZonePerfect bars that are in accord with my principles. The next generation of the crunch bars are coming soon. If nothing else, these first bars show than slight variations in the ratio of protein to carbohydrate and ingredients can have dramatic influences on the performance of the bars. So if they want some variety, try the first generation of crunch bars. If they want maximum performance, use the original ZonePerfect bars. This should be made very clear in all marketing literature and sales support.

TESTA001728

05/18/99     11:39     C P BAKER & CO → 7816398154                                    NO.440     P04

# M E M O R A N D U M

**Date:** May 18, 1999
**TO:** David Thibodeau

Denise Kelly

Paul Pruett

Rob Rafferty

**FROM:** Chris Baker
**CC:** Barry Sears

Doug Sears

In the last three weeks I have been embarrassed on two occasions by products which were not properly approved. I am therefore instituting a new procedure.

All new food product formulations must be approved first by Barry Sears and receive his signature and date.

Finally, no product is considered approved without my signature and date.

Any deviation or noncompliance to this procedure will result in immediate dismissal of an employee or the immediate termination of a consultancy agreement.

Sears Laboratories, Barry Sears, Doug Sears, and Eicotech are finishing an agreement, which I expect will be completely finalized by June 1st. If that agreement is approved, Eicotech will most likely contract with Sears Laboratories for economically viable improved formulas for some of it's products. I will contact you directly that time.

H:\APPL\FILES\WINWORD\CPBCOMP\MEMOS\MEM 5-99.DOC

**SEARS 003089**



To: Everyone

Any questions? Please email to me.

Polyphenols (600 sol actual)

Olive oil

## Supplement Facts
Serving Size  1 Capsule

| Amount Per Serving | % Daily Value |
|---|---|
| Vitamin A (as beta-carotene) 5,000 IU | 100% |
| Vitamin E (as d-alpha tocopherol) 200 IU | 667% |
| Grape seed extract (Vitis vinifera) 11.8 mg | * |
| Coenzyme Q-10 10 mg | * |
| Lycopene 5 mg (from tomato concentrate) | * |
| Lutein 5 mg (from marigold concentrate) | * |
| Ascorbyl palmitate 200 mcg | * |

* Daily Values not established

PATENT NUMBER: 5,380,752

STABILIZES FREE RADICALS TO HELP PROTECT CELLS FROM DAMAGE

A ZONE FORMULA

BARRY SEARS, Ph.D.  PATENTED

# ZONE PERFECT

## ANTIOXIDANT
An Alpha-Lipoic and Cellular Cascade Complex
Dietary Supplement and Performance Enhancer

30 CAPSULES    CHOLESTEROL FREE

INGREDIENTS:
D-alpha tocopherol, d-beta carotene (β-carotene) gelatin, lycopene, glycerin, niacin, lutein, grape seed extract, beta-carotene, Coenzyme Q-10, water, ascorbyl palmitate.

SUGGESTED USE:
Take one capsule daily before a meal.

DO NOT USE IF SAFETY SEAL IS BROKEN.
For maximum potency, store in a cool, dry place at room temperature (59-86 F).

For assistance with the Zone Diet™ or information on other ZonePerfect products, you can reach one of our technical staff at 800.233.3426 or on our interactive educational website at www.zoneperfect.com

*Information on fat and cholesterol content is provided for individuals who, on the advice of their physician, are modifying their total dietary intake of fat and cholesterol.

Distributed by Eicotech Corporation,
184 Cummings Center, Ste. 135 N,
Beverly, MA 01915

EICOTECH

6  38102  22412  5

SEARS 003090

**TAB 10**

# KAYE SCHOLER LLP

Thomas A. Smart, Esq.
212 836-8761
Fax 212 836-7154
tsmart@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212 836-8000
Fax 212 836-8689
www.kayescholer.com

May 31, 2004

*Via Fax*

Joshua M. Dalton, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110

> Re:    ***ZonePerfect Nutrition Company v.***
> ***Hershey Foods Corporation, et al.***
> <u>Civil Action No. 04-10760-REK</u>

Dear Josh:

We are in receipt of the survey reports of Dr. Simonson and Dr. McDonald. We trust that the following information and documents, much of which plaintiff was required by Fed.R.Civ.P. 26(2)(B) to produce with the survey reports, will voluntarily be produced on an expedited basis, without need for subpoenas on Dr. Simonson and Dr. McDonald:

1)    The data and any other information they considered in forming the opinions set forth in their reports (to the extent not provided in their reports);

2)    Any exhibits to be used as a summary of or support for their opinions;

3)    The compensation paid and to be paid for their reports and testimony (only Dr. McDonald appeared to provide this information) and a copy of any retention agreements;

4)    All drafts of the questionnaires;

5)    Copies of each completed questionnaire;

6)    All data, results, reports or summaries of the surveys (including all drafts thereof), including all data that exists in an electronic format;

7)    All codes used in coding the questionnaires and documents sufficient to indicate how each questionnaire was coded;

KAYE SCHOLER LLP

Joshua M. Dalton, Esq.                    2                    May 31, 2004

8)    All documents on which Simonson and McDonald relied or reviewed in con-
       nection with the surveys and their expert reports (to the extent not provided in
       their reports);

9)    Documents sufficient to indicate how Dr. Simonson calculated the 29%, 5% and
       3% numbers set forth in paragraph 32 of his report; and

10)   All documents concerning any communications between Dr. Simonson or Dr.
       McDonald and plaintiff, or any attorney for plaintiff, concerning this litigation or
       the products that are the subject of this litigation.

11)   All communications between Dr. Simonson and Dr. McDonald referring to this
       lawsuit or any survey or surveys that refer or relate to this litigation.

Please produce these documents by the close of business Friday, June 4th.

                                        Sincerely,

                                        Thomas A. Smart /vH

                                        Thomas A. Smart

cc:    Lisa Arrowood, Esq.
        Seni Adio, Esq.
        Daniel L. Goldberg, Esq.

30896122_V9.WPD

NEW YORK   CHICAGO   LOS ANGELES   WASHINGTON, D.C.   WEST PALM BEACH   FRANKFURT   HONG KONG   LONDON   SHANGHAI